**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:                                                  :
                                                        :
                                                        :
TANDALA MIMS AKA TANDALA WILLIAMS, :   Chapter 7
                                                        :
                                                        :   Case No. 10-14030 (MG)
                                                        :
                                        Debtor.         :
------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER DENYING WELLS FARGO BANK, N.A.'S**
**MOTION FOR TERMINATION OF THE AUTOMATIC STAY**

*A P P E A R A N C E S:*

STEVEN J. BAUM, P.C.
*Attorneys for Secured Creditor*
*Wells Fargo Bank, N.A.*
220 Northpointe Parkway, Suite G
Amherst, NY 14228
By:    Phillip Mahony, Esq.

LAMONICA HERBST & MANISCALCO, LLP
*Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, NY 11793
By:    Salvatore Lamonica, Esq.

LAW OFFICE OF DAVID BRODMAN
*Attorney for Debtor Tandala Mims*
633 Lydig Avenue
Bronx, NY 10462
By:    David Brodman, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

Wells Fargo Bank, N.A. ("Wells Fargo") moves the Court for an order lifting the

automatic stay with regard to 1167 Grenada Place, Bronx, NY 10466 (the "Property") pursuant

to section 362(d) of the Bankruptcy Code (the "Motion"). Wells Fargo desires to exercise its rights under a mortgage (the "First Mortgage" or "Mortgage") and promissory note (the "Note"), including, but not limited to, the foreclosure of the Property. (ECF Doc. # 9.) The Court held a hearing on the Motion on October 20, 2010 and took the matter under submission. The Court denies Wells Fargo's motion to lift the automatic stay for the reasons enumerated below.

## BACKGROUND

Tandala Mims, a/k/a Tandala Williams (the "Debtor"), filed a voluntary petition under chapter 7 of the Bankruptcy Code on July 27, 2010. (ECF Doc. # 1.) Wells Fargo contends that it is a secured creditor of the Debtor by an assignment of mortgage dated September 13, 2010, in the principal amount of $374,037.00 (the "Assignment"). The property is subject to two mortgages. The First Mortgage to Wells Fargo, dated May 10, 2004, indicates that the lender was Lend America, and was recorded in the name of Mortgage Electronic Registration Systems ("MERS"), as nominee for Lend America.[1] Wells Fargo claims that the Debtor owes $355,398.13 on the First Mortgage. The Debtor also has a second mortgage with M&T Bank (the "Second Mortgage"), which when combined with the First Mortgage and lien, totals $389,647.13. In support of its standing to bring the Motion, Wells Fargo attaches (1) loan documents, including the First Mortgage and accompanying Note; (2) a copy of the Debtor's Schedules A and D (the "Schedules"),[2] in which the Debtor lists Wells Fargo as a secured

---

[1] The State of New York's Banking Department website indicates that, "[o]n November 30, 2009, The Federal Housing Administration (FHA) withdrew the FHA approval of . . . [Lend America]. As a result, Lend America was prohibited from originating and underwriting new FHA-insured mortgages or participating in the FHA single family insurance program. Effective December 1, 2009, Lend America discontinued its mortgage origination operations. However, the company continues service [sic] mortgage loans." IDEAL MORTGAGE BANKER D/B/A LEND AMERICA, http://www.banking.state.ny.us/lendamerica.htm (last visited October 21, 2010).

[2] The Schedules were attached to the Debtor's petition. Schedule A lists Real Property and Schedule D lists Creditors Holding Secured Claims. (ECF Doc. # s 1, 9.)

2

creditor with respect to the Property and (3) a lift-stay worksheet, dated September 16, 2010, pursuant to Local Rule 4001-1(c) (the "Worksheet").

The Note attached to the Motion was originally made payable to Lend America. The last page of the Note, however, contains a stamped endorsement, "Paid to the Order of Washington Mutual Bank, FA, Without Recourse Lend America." (ECF Doc. # 9, at Ex. 1.) No evidence is offered that Washington Mutual Bank ever assigned or transferred the Note to Wells Fargo or to any other party. Washington Mutual Bank was taken over by the FDIC on September 25, 2008, and its assets were sold to J.P. Morgan Chase ("Chase") on that same date. Press Release, Fed. Deposit Ins. Corp., *JPMorgan Chase Acquires Banking Operations of Washington Mutual* (Sept. 25, 2008) (on file with FDIC). There is nothing in the record to indicate whether Chase acquired the Note and whether Chase, in turn, subsequently transferred the Note to Wells Fargo.

The Worksheet reflects that the Debtor's total pre-petition and post-petition indebtedness to Wells Fargo on the Property, as of the petition date, was $355,398.13; that the Debtor's last payment was received on June 4, 2010 (but was placed in a suspense account); and that the Debtor has missed six payments, from April 1, 2010 to September 1, 2010. In support of its claim that the Debtor lacks any substantial equity in the property, Wells Fargo attaches the Debtor's Schedule A and Schedule D, which list the current value of the Property as $430,000. Assuming the accuracy of this figure, the Debtor would have exempt equity in the property.[3]

---

[3]    The Bankruptcy Code contains a set of federal exemptions and permits debtors to choose between either federal or state exemptions. 11 U.S.C. § 522(b)(1). However, the Bankruptcy Code also permits individual states to "opt-out" of the federal exemption scheme. *See e.g.*, *In re Corio*, 190 B.R. 498, 499 (Bankr. E.D.N.Y. 1995). Pursuant to N.Y. DEBT. & CRED. LAW § 284, New York is one state that has opted-out from the federal exemption scheme. Consequently, the real property exemptions of CPLR § 5206 govern. Contained within CPLR § 5206(a) is New York's homestead exemption, which provides that qualifying real property is exempt from "application to [satisfy] a money judgment" if the value of the real property does not "[exceed] fifty thousand dollars in value above liens and encumbrances, [and is] owned and occupied as a principal residence." Qualifying real property under CPLR § 5206(a)(1) includes "a lot of land with a dwelling thereon."

The Debtor's Schedules claim the property as exempt and states the Debtor's intention to retain the property.

The signature on the Worksheet indicates that it was prepared by Craig C. Zecher, a Wells Fargo legal process specialist. Despite the fact that Wells Fargo did not obtain an assignment of the Mortgage until September 13, 2010, seven days before the lift-stay motion was filed on September 20, 2010, the Worksheet provides information about payment defaults dating back to April 1, 2010. Wells Fargo's ability to certify the accuracy of the information provided in the Worksheet is questionable given its only recently acquired interest in the First Mortgage.[4]

Neither the Debtor's counsel nor the chapter 7 trustee filed anything in response to the lift-stay motion.

## DISCUSSION

The Court concludes that Wells Fargo lacks standing to request relief from the automatic stay.

### A. Wells Fargo is Not a "Party in Interest" And Therefore Lacks Standing to Request Relief From the Automatic Stay

Section 362(a) of the Bankruptcy Code imposes an automatic stay on all litigation against the Debtor, as well as "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a). Section 362(d) of the Bankruptcy Code provides that "[o]n request of a *party in interest* and after notice and a hearing, the court shall grant relief from the stay . . . ." 11 U.S.C. § 362(d) (emphasis added). The term "party in interest" is nowhere defined in the Bankruptcy Code. However, the Supreme Court has suggested that when an

---

[4] The Worksheet states: "I certify that the information provided in this form and/or any exhibits attached to this form (other than the transactional documents attached as required by paragraphs 1, 2 and 3, immediately above) is derived from records, that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice." The Worksheet was then signed by Craig C. Zecher, Legal Process Specialist. (ECF Doc. # 9.)

4

undefined term is used in bankruptcy law, "[i]n determining the term's scope—and its limitations—the purposes of the Bankruptcy Act 'must ultimately govern.'" *Kokoszka v. Belford*, 417 U.S. 642, 645 (1974) (citing *Segal v. Rochelle*, 382 U.S. 375, 379 (1966)).

Though courts have interpreted the "purposes of the Bankruptcy Act" differently, the Second Circuit explained in *In re Comcoach*, 698 F.2d 571, 573 (2d Cir. 1983), "[b]ankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes . . . ." The *Comcoach* court went on to find that in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party had to be either a creditor or a debtor.[5] *Id.* In support of this assertion, the court cited to the Bankruptcy Code's legislative history "which suggests that, notwithstanding the use of the term 'party in interest', [sic] it is only creditors who may obtain relief from the automatic stay." *Id.* (citing H.R.REP. NO. 95-595, (1978), *reprinted in* 1978 U.S.C.C.A.C. 5787, 6136 ("Creditors may obtain relief from the stay if their interests would be harmed by continuance of the stay.")). It follows from the Second Circuit's analysis that unless Wells Fargo qualifies as a "creditor," it does not have standing to request relief from the automatic stay.

Section 101(10) of the Bankruptcy Code defines a "creditor" as an:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

11 U.S.C. § 101(10). This definition requires consideration of what constitutes a "claim," which conveniently is also a defined term in section § 101(5) of the Bankruptcy Code.

---

[5] The facts in *Comcoach* involved a bank, and therefore this language should not be read to exclude from the definition of a "party in interest" the United States Trustee or other corporate or corporeal entities specifically given standing in the Bankruptcy Code or applicable case law.

Section 101(5)(A) of the Bankruptcy Code defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Even under this broad definition, Wells Fargo has not demonstrated its "right to payment" because, as discussed more fully below, it lacks the ability to seek the state law remedy of foreclosure. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor).

### B. Wells Fargo Lacks Standing to Exercise any State Law Remedies

Within the context of a bankruptcy proceeding, state law governs the determination of property rights. *See Butner v. United States*, 440 U.S. 48, 54 (1979) (noting that absent an actual conflict with federal bankruptcy law, Congress "has generally left the determination of property rights in the assets of a bankrupt's estate to state law"); *In re Morton*, 866 F.2d 561, 563 (2d Cir. 1989). Under New York law "foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." *Kluge v. Fugazy*, 145 A.D.2d 537, 538 (2d Dept. 1988) (citing cases); *see also HSBC Bank USA, Nat. Ass'n v. Miller*, 26 Misc.3d 407, 411-12 (N.Y. Sup. Ct., Sullivan County 2009). As the courts in *Kluge* and *HSBC* have recognized, this rule of law dates back over one hundred and forty years, when the New York Court of Appeals held:

> [a]s a mortgage is but an incident to the debt which it is intended to secure the logical conclusion is that a transfer of the mortgage without the debt is a nullity, and no interest is acquired from the debt, and exist independently of it. This is the necessary legal conclusion, and recognized as the rule by a long course of judicial decisions.

*Merritt v. Bartholick*, 36 N.Y. 44, 45 (1867). Because Wells Fargo has not offered evidence that it owns the original Note, Wells Fargo lacks standing to foreclose on the Mortgage and has therefore failed to demonstrate it is the holder of a "claim."

According to N.Y. REAL PROPERTY LAW § 244, assignments in New York state may be effectuated by the delivery of the relevant note and mortgage. An assignment need not be evidenced by a written assignment. *In re Conde-Dedonato*, 391 B.R. 247, 251 (Bankr. E.D.N.Y. 2008) (citing *Flyer v. Sullivan,* 284 A.D. 697, 699 (1st Dept. 1954) ("Our courts have repeatedly held that a bond and mortgage may be transferred by delivery without a written instrument of assignment.")). Delivery requires the physical transfer of the instrument from assignor to assignee. *Bank of New York v. Mulligan*, No. 29399-07, 2010 WL 3339452, at *6 (N.Y. Sup. Ct., Kings County Aug. 25, 2010).

Wells Fargo has not supplied the Court with any evidence that the Note was physically delivered or assigned pursuant to a written agreement. Here, the Note only indicates a transfer from Lend America to Washington Mutual Bank and not to Wells Fargo. Wells Fargo has not presented any evidence that it is in possession of the original Note, or that it received the Note via a valid written assignment. Arguably, Wells Fargo has proved that it is the title holder of the Mortgage, as of a date seven days before the filing of the Motion, but the Assignment of Mortgage does not include language assigning the Note along with the Mortgage. Had the assignor desired to assign the Note using the same instrument, it could have used different language to accomplish this end. MCKINNEY'S REAL PROPERTY LAW § 258 [Schedule O], contains a form "Assignment of Mortgage" which clearly assigns both the mortgage and the underlying debt. The form contains the following language:

> Know that ........, assignor, in consideration of ........ dollars, paid by
> .............., assignee, hereby assigns unto the assignee, a certain mortgage

7

> made by .............., given to secure payment of the sum of ........ dollars and
> interest, dated the ........ day of ........, recorded on the ........ day of ........, in
> the office of the ............ of the county of ............, in liber ........ of
> mortgages, at page ........, covering premises ........, together with the bond or
> obligation described in said mortgage, and the moneys due and to grow due
> thereon with the interest,
> To have and to hold the same unto the assignee, and to the successors, legal
> representatives and assigns of the assignee forever.
> In witness whereof, the assignor has hereunto set his hand and seal this
> ........ day of ........, nineteen hundred and .........
> In presence of:

As one court recently cautioned, "[w]hile an assignor is not required to use statutory Form [sic] O, if it intends to assign the mortgage and the underlying debt, it is well advised to employ language that unambiguously does so." *Deutsche Bank Nat. Trust Co. v. McRae*, 894 N.Y.S.2d 720, 722 (N.Y. Sup. Ct., Allegany County 2010). As Wells Fargo has failed to prove it owns the Note, it has failed to establish that it has standing to pursue its state law remedies with regard to the Mortgage and Property.

### C. The Court Has Additional Reservations Regarding the Validity of the Mortgage Assignment

In support of its Motion, Wells Fargo annexed a copy of the Mortgage as Exhibit A to the Motion. While there is nothing that undermines the facial validity of the Mortgage, there are issues surrounding the Assignment from MERS, as nominee for Lend America, to Wells Fargo. The September 13, 2010 Assignment suggests that it may have been executed simply for purposes of enabling Wells Fargo to file a lift-stay motion. An assignment in anticipation of bringing a lift-stay motion does not in and of itself indicate bad faith. However, in the absence of a credible explanation, describing how, when and from whom Wells Fargo derived its rights, relief from the stay will not be granted. Second, MERS, as nominee for Lend America, and presumably its Assistant Vice President, John Kennerly, whose signature is on the assignment, have an address in Ocala, Florida. Kennerly's signature on the Assignment was, however,

8

notarized in South Carolina, the address shown on the Assignment for Wells Fargo. Did Kennerly personally appear before the notary as represented? If not, is the Assignment valid? When asked about these issues during the October 20, 2010 hearing, Wells Fargo's counsel was unable to answer any questions about the supporting documents. All of these matters will need to be addressed if Wells Fargo renews its lift-stay motion. Under FED. R. BANKR. P. 9014(a), the Motion to lift the automatic stay created a contested matter. Under that Rule, "No response is required . . . unless the court directs otherwise." *Id.* In the event a new lift-stay motion is filed, Debtor's counsel and the chapter 7 trustee are directed to file a response.

## CONCLUSION

For the reasons explained above, Wells Fargo's motion to lift the automatic stay is **DENIED** without prejudice.

**IT IS SO ORDERED.**

DATED:   October 27, 2010
         New York, New York

                                             /s/Martin Glenn
                                             MARTIN GLENN
                                       United States Bankruptcy Judge