UNITED STATES BANKRUPTCY COURT     **Hearing Date:  December 8, 2010 (10:00 a.m.)**
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                    :

In re                          :    Case No. 10-14030 (MG)
                    :

TANDALA MIMS, aka Tandala Williams,    :    Chapter 7
                    :

           Debtor.             :

------------------------------------------------------ x

      **PLEASE TAKE NOTICE** that upon the annexed application, Tracy Hope Davis, the

United States Trustee for Region 2 (the "United States Trustee"), will move this Court before the

Honorable Martin Glenn, United States Bankruptcy Judge, in the United States Bankruptcy

Court, One Bowling Green, New York, New York  10004 on **December 8, 2010 at 10:00 a.m.**,

or as soon thereafter as counsel can be heard, for an order: (a) authorizing the issuance of a

subpoena *duces tecum* compelling Wells Fargo Bank, N.A. ("Wells Fargo"), to produce the

documents identified in **Exhibit A** attached to the Application, (b) compelling Wells Fargo to

appear via a duly authorized representative most familiar with the documents identified in

**Exhibit A**, for an examination and to answer any and all questions regarding the documents and

the topics identified in **Exhibit B** attached to the Application, as the documents relate to the

administration of the Debtor's estate; and (c) granting such other relief as this court deems just

and proper.  The Application is on file with the Clerk of the Bankruptcy Court.

      **PLEASE TAKE FURTHER NOTICE** that any responsive papers should be filed with

the Court and personally served on the United States Trustee, at 33 Whitehall Street, 21st Floor,

New York, New York 10004, to the attention of Andrew D. Velez-Rivera, Esq., no later than

three (3) days prior to the return date set forth above.  Such papers shall identify the party on

whose behalf the papers are submitted, the nature of the response, and the basis for such

response.

Dated: New York, New York
      November 19, 2010

                                      TRACY HOPE DAVIS
                                        UNITED STATES TRUSTEE

*By:*    */s/ Andrew D. Velez-Rivera*
             Trial Attorney
             Office of the United States Trustee
             33 Whitehall Street - 21st Floor
             New York, New York 10004
             Tel. No. (212) 510-0500
             Fax No. (212) 668-2255

**To:**

Ehret A. Van Horn, Esq.
Steven J. Baum, P.C.
220 Northpointe Parkway, Suite G
Amherst, New York 14228

David Brodman, Esq.
633 Lydig Avenue
Bronx, New York 10462

Salvatore LaMonica
LaMonica Herbst & Maniscalco
3305 Jerusalem Ave.
Wantagh, New York 11793

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x
                       :

In re                      :   Case No. 10-14030 (MG)
                       :

TANDALA MIMS, aka Tandala Williams,  :   Chapter 7
                       :

           Debtor.        :

-------------------------------------------------- x

## APPLICATION OF THE UNITED STATES TRUSTEE FOR (i) AN ORDER AUTHORIZING THE ISSUANCE OF A SUBPOENA *DUCES TECUM* AND (ii) AN ORDER COMPELLING WELLS FARGO BANK, N.A. TO APPEAR FOR  EXAMINATION PURSUANT TO FED. R. BANKR. P. 2004

TO:   THE HONORABLE MARTIN GLENN, UNITED STATES BANKRUPTCY JUDGE:

       Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"),

submits this application (the "Application") pursuant to Rules 2004 and 9016 of the Federal Rules

of Bankruptcy Procedure for an order:

(a)     Authorizing the issuance of a subpoena *duces tecum*, compelling Wells Fargo Bank, N.A. ("Wells Fargo") to produce the documents as set forth in **Exhibit A** to this Application at the date and time set forth below; and

(b)     Compelling Wells Fargo to appear, via a duly authorized representative most familiar with the documents identified in **Exhibit A**, for an examination and to answer any and all questions regarding the documents and the topics identified in **Exhibit B** attached to the Application, as the documents relate to the administration of the Debtor's estate; and

(c)     Granting such other relief as this court deems just and proper.

**Requested Date & Location for Production**
**of Documents identified in Exhibit A:**
Friday, January 7, 2011, by 4 o'clock p.m.
Office of the United States Trustee
Attn.: Andrew D. Velez-Rivera, Esq.
33 Whitehall Street - 21st Floor
New York, New York 10004

**Requested Date and Location for Examination:**

Wednesday, January 19, 2011 at 10 o'clock a.m.
Office of the United States Trustee
33 Whitehall Street - 21st Floor
New York, New York 10004

## INTRODUCTION

The Court has denied Wells Fargo's motion for termination of the automatic stay (the "Motion"), on the grounds that it has not established status as a "party in interest" with standing to seek relief from the automatic stay, and because Wells Fargo lacks standing to exercise any state law remedies in light of its failure to establish ownership of a promissory note giving rise to its asserted claim. *In re Tandala Mims*, Memorandum Opinion and Order Denying Wells Fargo Bank, N.A.'s Motion for Termination of the Automatic Stay, ___ B.R. ___, 2010 WL 4260041 (Bankr. S.D.N.Y., October 27, 2010) (the "Ruling"). A copy of the Ruling is attached hereto as **Exhibit "C".**

The United States Trustee seeks additional information regarding the factual and legal bases for Motion, in order to ascertain whether Wells Fargo's conduct otherwise deviates from the standards established by the Bankruptcy Code and Local Bankruptcy Rule 4001-1. Depending upon the outcome of this inquiry, the United States Trustee and/or the Chapter 7 trustee may seek further discovery-related relief from the Court with respect to Wells Fargo, or its agents or attorneys.

3

## BACKGROUND

1.      On July 27, 2010 (the "Filing Date"), the Debtor filed for bankruptcy relief under

chapter 7 of the Bankruptcy Code.  Docket No. 1.  On that same day, the Debtor filed Schedules

and a Statement of Financial Affairs (collectively, the "Schedules").  *Id.*  The Schedules disclosed

that the Debtor has a joint tenancy ownership interest in a parcel of improved real property,

consisting of a two-family house located at 1167 Grenada Place, Bronx, New York, with a value of

$430,000 (the "Bronx Property").

### WELLS FARGO'S MOTION TO TERMINATE THE AUTOMATIC STAY

2.      On September 20, 2010, Wells Fargo filed a motion to terminate the automatic stay

against the Bronx Property (the "Motion," Docket No. 9).  In the Motion, Wells Fargo asserts that

the Debtor's last payment was received on June 4, 2010 (and placed in a suspense account), and

that the Debtor had missed six monthly payments of $2,771.96 between April 1, 2010 and

September 1, 2010.  *See* Motion, Worksheet, at 2, lines 11 and 13.  Wells Fargo asserts a pre- and

post-petition indebtedness of $355,398.13, consisting of principal due in the amount of

$343,427.12, interest of $12,019.98, escrow (taxes and insurance) in the amount of $1,960.34, plus

pre-petition late fees and charges of $448.50.  *Id.*, line 8.  A copy of the Worksheet is attached

hereto as **Exhibit D**.

3.      Wells Fargo's alleged debt is based on a "Note" in the amount of $374,037, made

by the Debtor in favor of Lend America on May 10, 2004.  Motion, at Exh. A.  Wells Fargo asserts

that it is a secured creditor of the Debtor by virtue of an assignment of "Mortgage" made to it on

September 13, 2010.  Motion, ¶ 1, at 1.

4

4.      The Bronx Property is also subject to a second mortgage, in the amount of

$34,249.00.  *See* Schedule D.  When combined with the amount of indebtedness claimed by Wells

Fargo, total encumbrances upon the Bronx Property are $389,647.13.  The value of the Property,

according to the Debtor, is $430,000.  *Id.*  Thus, the Debtor may have equity in the Property, and

her Schedule C (Exemptions) lists the Bronx Property.  *See* Schedule C.

### THE RULING

5.      The Motion was heard by this Court on October 20, 2010.  Counsel to the United

States Trustee appeared at the hearing.

6.      In its Ruling of October 27, 2010, the Court concluded that "Wells Fargo lacks

standing to request relief from the automatic stay."  *Id.*, 2007 WL 4260041, at *2-3.  In this regard,

the Court determined that, Wells Fargo had not proven as an evidentiary matter that it has a "right

to payment" within the meaning of a claim under 11 U.S.C. § 101(5)(A).  Ruling, 2007 WL

426041, at *3.

7.      Specifically, the Court found that "Wells Fargo has failed to prove it owns the

Note, it has failed to establish that it has standing to pursue its state law remedies with regard to

the Mortgage and the [Bronx] Property."  *Id.*, at *3-4.  Instead:

> The Note attached to the Motion was originally made to Lend
> America.  The last page of the Note, however, contains a stamped
> endorsement, "Paid to the order of Washington Bank, FA, Without
> Recourse Lend America."  No evidence is offered that Washington
> Bank ever assigned or transferred the Note to Wells Fargo or to any
> other party.

*Id.*, at *1.

5

8.      Accordingly, the Court concluded that Wells Fargo had not established its status as a creditor in the Motion.  *Id.*, at *2-3.  Wells Fargo, in this regard, has not filed a proof of claim in this case as of this date.  *See* Claims Register.

9.      The Ruling also gives rise to "additional reservations regarding the validity of the mortgage assignment."  *Id.*, at *6.  In particular, the Court noted that an assignment of the Mortgage from MERS (the Mortgage Electronic Registration System), as nominee for Lend America, to Wells Fargo, took place on September 13, 2010, *i.e.*, only one week prior to the filing of the Motion by Wells Fargo.  *Id.*  The Court indicated that it would not terminate the automatic stay in favor of Wells Fargo, at least "until a credible explanation describing how, when and from whom Wells Fargo derived its rights."  *Id.*

10.     The Court also had inquiries about the notarial act shown on the assignment, questioning whether the individual signing the assignment (John Kennerly) actually appeared before a South Carolina-based notary, and if not, whether the assignment is valid.  *Id.*

## AUTHORITY FOR THE RELIEF REQUESTED

11.     Federal Rule of Bankruptcy Procedure ("Rule") 2004(a) provides that upon the motion of a party in interest, the Court may order the examination of an entity regarding the acts, conduct, property, liabilities or financial condition of the debtor or any matter that may affect the administration of the estate of the debtor.  Courts that have analyzed Bankruptcy Rule 2004 have recognized the right of a party in interest to conduct a 2004 examination, and the permitted scope of that examination is extremely broad.  *See, e.g.,* In re Texaco, Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (*citing* In re Johns-Manville Corp., 42 B.R. 362 (S.D.N.Y. 1984)).

6

12.    The United States Trustee is an official of the Executive Branch of the federal

government, and is "responsible for 'protecting the public interest and ensuring that bankruptcy

cases are conducted according to the law.' " Adams v. Zarnel (In re Zarnel et al.), ___ F.3d ___,

2010 WL 3341428, * 5 (2d Cir., August 26, 2010); H.R. Rep. No. 95-595, at 109 (1978), reprinted

in 1978 U.S.C.C.A.N. 5963, 6070.  United States Trustees "are officers of the Department of

Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of

bankruptcy proceedings." Zarnel, 2010 WL 3341428, at * 5, quoting United Artists Theatre Co.,

Inc. v. Walton, 315 F.3d 217, 225 (3d Cir. 2003).  United States Trustees are authorized by statute

to perform specific duties that include, among other things, "supervis[ing] the administration of

cases" in chapter 7 proceedings.  28 U.S.C. § 586(a)(3).  Accordingly, the Court has requested that

the United States Trustee examine the underpinnings of the Motion.  October 20, 2010 Transcript,

at 8:7-10.

13.    "Good cause" is the standard employed to determine if cause exists to support an

examination under Bankruptcy Rule 2004.  To obtain authority to conduct an examination, the

movant must show  " 'some reasonable basis to examine the material ... [and] that the requested

documents are necessary to establish the movant's claim or that denial of production would cause

undue hardship or injustice.'" In re Grabill Corp., 109 B.R. 329, 334 (N.D. Ill.1989) (citing In re

Wilcher, 56 B.R. 428, 434-35 (Bankr. N.D. Ill.1985) ("the proper allocation of burden of proof on

[a motion to quash] initially requires the examiner to show some reasonable basis to examine the

material sought to be discovered")).

14.    "Generally, good cause is shown if the Rule 2004 examination is necessary to
establish the claim of the party seeking the examination, or if denial of such request would cause
the examiner undue hardship or injustice." *See* In re Meticom, Inc., 318 B.R. 263, 268 (S.D.N.Y.
2004); *see also* In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr. E.D.Tex.1998) (same); In
re Hammond, 140 B.R. 197, 201 (S.D.Ohio1992) (same); In re Dinubilo, 177 B.R. 932, 943
(E.D.Cal.1993).   "However the burden of showing good cause is an affirmative one and is not
satisfied merely by a showing that justice would not be impeded by production of the requested
documents." Wilcher, 56 B.R. at 434-35.  "Furthermore, if the cost and disruption to the examinee
attendant to a requested examination outweigh the benefits to the examiner, the request should be
denied." Express One, 217 B.R. at 217. "Good cause is established if the one seeking the Rule
2004 examination has shown that such an examination is reasonably necessary for the protection
of its legitimate interests." Hammond, 140 B.R. at 201.

15.    The Court's Ruling shows that Wells Fargo has filed incomplete documents in this
case.  Furthermore, Local Bankruptcy Rule 4001-1 requires a creditor filing a motion to vacate the
stay to file a worksheet containing detailed information about the creditors' claim.  The Worksheet
was attached to the Motion.  As set forth in the Ruling, however, the foundations of the
Worksheet's representations have been questioned, and further examination in this regard is in
order.

16.    In published decisions issued prior to this Court's recent Ruling, the Court has
discussed the need for secured lenders to provide accurate information in filings before the Court
or else "[t]he debtor and his/her family may lose their home, and the debtor and other creditors
may lose significant equity in foreclosure." In re Gorshtein, 285 B.R. 118, 122 (Bankr. S.D.N.Y.

8

2002); In re Fagan, 376 B.R. 81, 87 (Bankr. S.D.N.Y. 2007).  Consequently, "cause" exists

authorizing the issuance of a subpoena to compel document production under Bankruptcy Rules

2004(c) and 9016, and moreover, for the issuance of an order directing Wells Fargo to appear for

an examination under Rule 2004.[1]

      17.     A proposed subpoena is annexed hereto as **Exhibit E**.

WHEREFORE, the United States Trustee respectfully requests the entry of an order

substantially similar to the proposed order attached as **Exhibit F**:

    a.    Authorizing the issuance of a subpoena *duces tecum* compelling Wells Fargo to produce the documents identified in **Exhibit A** attached to this Application;

    b.    Compelling Wells Fargo to appear, via a duly authorized representative most familiar with the documents identified in **Exhibit B**, for an examination and to answer any and all questions regarding the documents and the topics identified in Exhibit B attached to the Application, as the documents relate to the administration of the Debtor's estate; and

    c.    Granting such other relief as this court deems just and proper.

Dated: New York, New York
      November 19, 2010               Respectfully submitted,

                                  TRACY HOPE DAVIS
                                  UNITED STATES TRUSTEE

                ***By:***     */s/ Andrew D. Velez-Rivera*
                                  Trial Attorney
                                  33 Whitehall Street - 21st Floor
                                  New York, New York 10004
                                  Tel. (212) 510-0500; Fax (212) 668-2255

---

[1] This case filed after the adoption of General Order M-364 (the "Loss Mitigation Procedures") on January 5, 2009.  Under the Loss Mitigation Procedures, either a debtor or creditor may indicate an interest in discussing loss mitigation.  There is no indication in the record that General Order M-364 has been invoked in this case by either the Debtor or Wells Fargo.

# EXHIBIT A

**EXHIBIT A**

<u>SCHEDULE OF DOCUMENTS TO BE PRODUCED</u>

## I. Definitions

The terms used herein shall have the meaning ascribed to them in the definitions set forth below:

1.    The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts photographs, phonorecords, electronic, recorded, digitally encoded, graphic; and/or other date compilations from which information can be obtained, translated if necessary, by the defendants through detection devices into reasonably usable form, or other information, including originals, translations and drats thereof and all copies bearing notations and marks not found on the original.  The term "document" includes, without limitation, affidavits, analyses, appointment book, appraisals, articles from publications, audit and scope plans (whether in paper, data base, electronic or other format(s)), audit workpapers (whether in paper, database, electronic, or other format(s)), books, books of account, account statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoiced, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners; and employees' review check lists, permanent files, pictures, press releases , projections, prospectuses, publications, receipts, recording of conferences, conversations or meetings, reports, statements statistical records, studies, summaries, tabulations, telegrams, telephone records, telex messages, transcripts, understandings, videotapes, vouchers, work papers, copies of the defendants' records and documents, and sheets or things similar to any of the foregoing however denominated.  The term "document" further includes email and electronic communication whether stored on a personal computer, network computer system, backup computer tape and/or disc or by some other storage mechanism.  The term "document" further means any document now or at any time in the possession, custody or control of the entity to whom this document request is directed (together with any predecessors, successors, affiliates, subsidiaries or division thereof, and their officers, directors, employees, agents and attorneys). Without limiting the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right to secure the document or a copy thereof from another person having actual possession thereof, including, but not limited to, work product contracted by you from professional firms.

2.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

1

3.    "Debtor" means Tandala Mims

4.    "Bankruptcy Case" means the chapter 7 case of Tandala Mims, pending in the United States Bankruptcy Court Southern District of New York under Docket No. 10-14030 (MG).

5.    "MERS" means Mortgage Electronic Registration Systems, Inc.

6.    "Mortgage" means that Mortgage between Tandala Mims, Lydia Mims and Johnnie Belle, on the one hand, and MERS, as nominee for Lend America, dated May 109, 2004, with respect to the Property, attached to the Motion and referred to in paragraph 1 therein.

7.    "Motion" means the Motion for Termination of Automatic Stay filed by Wells Fargo Bank. N.A. on September 20, 2010 in the Bankruptcy Case (Docket No. 9), including all attachments and Exhibits thereto.

8.    "Note" means the Note dated May 10, 2004, executed by Tandala Mims, Lydia Mims and Johnnie Belle, attached to the Motion and referred to in paragraph 1 therein.

9.    "Property" means the improved parcel of real estate located at 1167 Grenada Place, Bronx, New York.

10.    "Wells Fargo" means Wells Fargo Bank, N.A.

11.    The terms "all" and "each" shall be construed as "all and each."

12.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

## II. **Instructions**

A.    The documents covered by this request include all documents in your possession, custody or control.  Unless otherwise specified, each request herein seeks all documents generated or received by you during the period from May 2004 through the date of production.

B.    Each request for the production of documents shall be deemed to be c continuing in nature.  If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

C.      You shall produced all documents in the manner in which they are maintained in the usual course of your business, and/or you shall organize and label the documents to correspond with the categories in this request.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letter, exhibits, enclosures, or attachments to the document in addition to the documents itself.

D.      If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the electronic document(s) or database as you would access such electronic documents(s) or database in the ordinary course of your business.

E.      Documents shall be produced in such fashion as to identify the department, branch or office in which there were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

F.      Any document withheld from production based upon a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the documents, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document and where not apparent, the relationship of the author and the addressee to each other.  The nature of each claim of privilege shall be set forth.

G.      Documents attached to each other should not be separated.

H.      Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for in this discovery request.

I..      The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same documents, even if the two documents are identical.

J.      In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possess directly by you or your agents, employees, representatives, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

K.      If you object to any part of any request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

3

L.    Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

M..    The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

## III. __Documents Requested__

Request No. 1

All documents that were used or relied upon by Wells Fargo in support of the Motion.

Request No . 2

All statements and account histories concerning the Note and Mortgage, including but not limited to a complete loan history for the Note.

Request No. 3

All documents regarding Wells Fargo's ownership of the "Note" and "Mortgage" referenced in paragraph 1 of the Motion, including complete copies of the Note (together with all assignments and endorsements thereof), and complete copies of the Mortgage (together with all assignments and endorsements thereof).

Request No. 4

All documents regarding any transfers of the Note and Mortgage by, between and among any and all prior assignors thereof.

Request No. 5

All documents regarding any transfers of the Note and Mortgage to Wells Fargo.

Request No. 6

For the period of May 2004 through the present, all documents exchanged between Wells Fargo and MERS concerning the Note and Mortgage.

Request No. 7

The retainer and/or service agreement(s) between Wells Fargo and MERS.

4

Request No. 8

All documents concerning the endorsement to Washington Mutual appearing on page 2 of the Note.

Request No. 9

All correspondence (including emails) to or from any person (including but not limited to the Debtor/borrowers, any authorized agent(s) or any third party) regarding the loan evidenced by the Note, the Note, and the Mortgage.

Request No. 10

Copies of any and all notes made by Wells Fargo's employees, or any agent employed by Wells Fargo to review or otherwise manage or service the loan evidenced by the Note regarding the amounts due under the Note; the calculation of any principal, interest, fees or other charges, whether pre- or post-petition; the calculation of or application of any payments made against the loan balance or any charges arising under the Note; together with any notes evidencing or regarding any communications with the above named debtors or their counsel, whether such communications were oral or written, to the extent these notes are not produced in response to request no. 9 above.

Request No. 11

All documents concerning any policy or procedure, written or otherwise published, concerning Wells Fargo's drafting, verifying and filing of motions for relief from the automatic stay in bankruptcy cases in the Southern District of New York, effective on July 27, 2010.

Request No. 12

All documents concerning any policy or procedure, written or otherwise published, concerning Wells Fargo's drafting, verifying and filing of proofs of claim in bankruptcy cases in the Southern District of New York, effective on July 27, 2010.

# EXHIBIT B

## EXHIBIT B

## TOPICS FOR EXAMINATION

1.    The policies and procedures of Wells Fargo Bank, applicable to the <u>Mims</u> case, for preparing and validating motions for relief from the automatic stay and proofs of claim for submission and filing in bankruptcy cases of customers who are debtors under Chapters 7 and 13.

2.    The policies and procedures of Wells Fargo, applicable to the <u>Mims</u> case, for collection on accounts of customers that have filed voluntary bankruptcy petitions under Chapters 7 and 13.

3.    Handbooks, computer files and any other media materials for the training of employees and agents of Wells Fargo instructing them on how to prepare, validate and file filing of proofs of claim and or motions for relief from the automatic stay, in the United States Bankruptcy Courts.

4.    Wells Fargo's relationship with MERS as that relationship concerns the <u>Mims</u> case.

5.    Wells Fargo's policies and procedures for monitoring payments made on the <u>Mims</u> account prior to and during the <u>Mims</u> case.

6.    Wells Fargo's policies and procedures, applicable to the <u>Mims</u> case, for referring a motion for relief.

7.    On behalf of Wells Fargo, who concluded that a motion for relief should be filed in the <u>Mims</u> case.

8.    The documents on which Wells Fargo relief in preparing its motion for relief in the <u>Mims</u> case.

9.    Information regarding all documents requested in Exhibit "A"appended to the subpoena.

EXHIBIT C

Westlaw.

--- B.R. ----, 2010 WL 4260041 (Bkrtcy.S.D.N.Y.)
**(Cite as: 2010 WL 4260041 (Bkrtcy.S.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States Bankruptcy Court,
S.D. New York.
In re Tandala MIMS aka Tandala Williams, Debtor.
**No. 10-14030 (MG).**

Oct. 27, 2010.

**Background:** Alleged downstream assignee of Chapter 7 debtors' mortgage moved for relief from stay to exercise its purported rights in property.

**Holding:** The Bankruptcy Court, Martin Glenn, J., held that alleged downstream assignee of Chapter 7 debtors' mortgage, not having established that it had possession of mortgage note, could not pursue cause of action to foreclose mortgage under New York law and did not qualify as "creditor," with standing to move for relief from automatic stay.

Motion denied.

West Headnotes

**[1] Bankruptcy 51 ⚛➩2438**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(C) Relief from Stay
         51k2435 Proceedings
            51k2438 k. Parties; Standing. Most Cited Cases
Only "creditors" have standing to move for relief from automatic stay. 11 U.S.C.A. § 362(d).

**[2] Bankruptcy 51 ⚛➩2534**

51 Bankruptcy
   51V The Estate
      51V(C) Property of Estate in General
         51V(C)1 In General
            51k2534 k. Effect of State Law in General. Most Cited Cases
State law governs the determination of property rights in bankruptcy.

**[3] Mortgages 266 ⚛➩429**

266 Mortgages
   266X Foreclosure by Action
      266X(E) Parties and Process
         266k428 Plaintiffs
            266k429 k. In General. Most Cited Cases
Under New York law, action to foreclose mortgage may not be brought by one who has no title thereto.

**[4] Mortgages 266 ⚛➩228**

266 Mortgages
   266V Assignment of Mortgage or Debt
      266k228 k. Necessity of Delivery of Evidence of Indebtedness Secured. Most Cited Cases
Under New York law, absent a transfer of mortgage debt, assignment of mortgage is nullity.

**[5] Bankruptcy 51 ⚛➩2438**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(C) Relief from Stay
         51k2435 Proceedings
            51k2438 k. Parties; Standing. Most Cited Cases

**Mortgages 266 ⚛➩429**

266 Mortgages
   266X Foreclosure by Action
      266X(E) Parties and Process
         266k428 Plaintiffs
            266k429 k. In General. Most Cited Cases
Alleged downstream assignee of Chapter 7 debtors' mortgage, not having established that it had possession of mortgage note, could not pursue cause of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

--- B.R. ----, 2010 WL 4260041 (Bkrtcy.S.D.N.Y.)
**(Cite as: 2010 WL 4260041 (Bkrtcy.S.D.N.Y.))**

action to foreclose mortgage under New York law and did not qualify as "creditor," with standing to move for relief from automatic stay. 11 U.S.C.A. §§ 101(5,10), 362(d).

**[6] Assignments 38 ⬅34**

38 Assignments
   38II Mode and Sufficiency of Assignment
     38k34 k. Oral Assignments. Most Cited Cases
Under New York law, assignment need not be evidenced by written assignment.

**[7] Mortgages 266 ⬅235**

266 Mortgages
   266V Assignment of Mortgage or Debt
     266k234 Transfer of Debt or Obligation Secured
      266k235 k. In General. Most Cited Cases
Under New York law, delivery of mortgage note requires the physical transfer of instrument from assignor to assignee.

**[8] Mortgages 266 ⬅224**

266 Mortgages
   266V Assignment of Mortgage or Debt
     266k224 k. Form and Requisites of Assignments of Mortgage in General. Most Cited Cases

**Mortgages 266 ⬅235**

266 Mortgages
   266V Assignment of Mortgage or Debt
     266k234 Transfer of Debt or Obligation Secured
      266k235 k. In General. Most Cited Cases
Under New York law, while mortgage assignor is not required to use statutory form, if it intends to assign both the mortgage and underlying debt, it is well advised to employ language that unambiguously does so.

**[9] Bankruptcy 51 ⬅2442**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
     51IV(C) Relief from Stay
      51k2435 Proceedings
       51k2442 k. Determination and Relief; Conditions. Most Cited Cases
While fact that assignment, which movant produced in attempt to demonstrate its standing to move for relief from stay as to mortgaged property, was only recently executed in anticipation of lift-stay motion was not, in and of itself, indicative of bad faith, absent some credible explanation, describing how, when and from whom movant derived its rights, relief from stay would not be granted. 11 U.S.C.A. § 362(d).

Steven J. Baum, P.C. by Phillip Mahony, Esq., Amherst, NY, Attorneys for Secured Creditor Wells Fargo Bank, N.A.

Lamonica Herbst & Maniscalco, LLP by Salvatore Lamonica, Esq., Wantagh, NY, Chapter 7 Trustee.

Law Office Of David Brodman, by David Brodman, Esq., Bronx, NY, Attorney for Debtor Tandala Mims.

## MEMORANDUM OPINION AND ORDER DENYING WELLS FARGO BANK, N.A.'S MOTION FOR TERMINATION OF THE AUTOMATIC STAY

MARTIN GLENN, United States Bankruptcy Judge.

**\*1** Wells Fargo Bank, N.A. ("Wells Fargo") moves the Court for an order lifting the automatic stay with regard to 1167 Grenada Place, Bronx, N.Y. 10466 (the "Property") pursuant to section 362(d) of the Bankruptcy Code (the "Motion"). Wells Fargo desires to exercise its rights under a mortgage (the "First Mortgage" or "Mortgage") and promissory note (the "Note"), including, but not limited to, the foreclosure of the Property. (ECF Doc. # 9.) The Court held a hearing on the Motion

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

--- B.R. ----, 2010 WL 4260041 (Bkrtcy.S.D.N.Y.)
(Cite as: 2010 WL 4260041 (Bkrtcy.S.D.N.Y.))

on October 20, 2010 and took the matter under sub-mission. The Court denies Wells Fargo's motion to lift the automatic stay for the reasons enumerated below.

## BACKGROUND

Tandala Mims, a/k/a Tandala Williams (the "Debtor"), filed a voluntary petition under chapter 7 of the Bankruptcy Code on July 27, 2010. (ECF Doc. # 1.) Wells Fargo contends that it is a secured creditor of the Debtor by an assignment of mort-gage dated September 13, 2010, in the principal amount of $374,037.00 (the "Assignment"). The property is subject to two mortgages. The First Mortgage to Wells Fargo, dated May 10, 2004, in-dicates that the lender was Lend America, and was recorded in the name of Mortgage Electronic Regis-tration Systems ("MERS"), as nominee for Lend America.[FN1] Wells Fargo claims that the Debtor owes $355,398 .13 on the First Mortgage. The Debtor also has a second mortgage with M & T Bank (the "Second Mortgage"), which when com-bined with the First Mortgage and lien, totals $389,647.13. In support of its standing to bring the Motion, Wells Fargo attaches (1) loan documents, including the First Mortgage and accompanying Note; (2) a copy of the Debtor's Schedules A and D (the "Schedules"),[FN2] in which the Debtor lists Wells Fargo as a secured creditor with respect to the Property and (3) a lift-stay worksheet, dated September 16, 2010, pursuant to Local Rule 4001-1(c) (the "Worksheet").

The Note attached to the Motion was originally made payable to Lend America. The last page of the Note, however, contains a stamped endorse-ment, "Paid to the Order of Washington Mutual Bank, FA, Without Recourse Lend America." (ECF Doc. # 9, at Ex. 1.) No evidence is offered that Washington Mutual Bank ever assigned or trans-ferred the Note to Wells Fargo or to any other party. Washington Mutual Bank was taken over by the FDIC on September 25, 2008, and its assets were sold to J.P. Morgan Chase ("Chase") on that

same date. Press Release, Fed. Deposit Ins. Corp., *JPMorgan Chase Acquires Banking Operations of Washington Mutual* (Sept. 25, 2008) (on file with FDIC). There is nothing in the record to indicate whether Chase acquired the Note and whether Chase, in turn, subsequently transferred the Note to Wells Fargo.

The Worksheet reflects that the Debtor's total pre-petition and post-petition indebtedness to Wells Fargo on the Property, as of the petition date, was $355,398.13; that the Debtor's last payment was re-ceived on June 4, 2010 (but was placed in a sus-pense account); and that the Debtor has missed six payments, from April 1, 2010 to September 1, 2010. In support of its claim that the Debtor lacks any substantial equity in the property, Wells Fargo attaches the Debtor's Schedule A and Schedule D, which list the current value of the Property as $430,000. Assuming the accuracy of this figure, the Debtor would have exempt equity in the property. [FN3] The Debtor's Schedules claim the property as exempt and states the Debtor's intention to retain the property.

**\*2** The signature on the Worksheet indicates that it was prepared by Craig C. Zecher, a Wells Fargo legal process specialist. Despite the fact that Wells Fargo did not obtain an assignment of the Mortgage until September 13, 2010, seven days before the lift-stay motion was filed on September 20, 2010, the Worksheet provides information about payment defaults dating back to April 1, 2010. Wells Fargo's ability to certify the accuracy of the information provided in the Worksheet is questionable given its only recently acquired interest in the First Mort-gage.[FN4]

Neither the Debtor's counsel nor the chapter 7 trust-ee filed anything in response to the lift-stay motion.

## DISCUSSION

The Court concludes that Wells Fargo lacks stand-ing to request relief from the automatic stay.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- B.R. ----, 2010 WL 4260041 (Bkrtcy.S.D.N.Y.)
**(Cite as: 2010 WL 4260041 (Bkrtcy.S.D.N.Y.))**

**A. Wells Fargo is Not a "Party in Interest" And Therefore Lacks Standing to Request Relief From the Automatic Stay**

Section 362(a) of the Bankruptcy Code imposes an automatic stay on all litigation against the Debtor, as well as "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a). Section 362(d) of the Bankruptcy Code provides that "[o]n request of a *party in interest* and after notice and a hearing, the court shall grant relief from the stay...." 11 U.S.C. § 362(d) (emphasis added). The term "party in interest" is nowhere defined in the Bankruptcy Code. However, the Supreme Court has suggested that when an undefined term is used in bankruptcy law, "[i]n determining the term's scope-and its limitations-the purposes of the Bankruptcy Act 'must ultimately govern.' " *Kokoszka v. Belford,* 417 U.S. 642, 645, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (citing *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)).

[1] Though courts have interpreted "the purposes of the Bankruptcy Act" differently, the Second Circuit explained in *In re Comcoach,* 698 F.2d 571, 573 (2d Cir.1983), "[b]ankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes...." The *Comcoach* court went on to find that in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party had to be either a creditor or a debtor.[FN5] *Id.* In support of this assertion, the court cited to the Bankruptcy Code's legislative history "which suggests that, notwithstanding the use of the term 'party in interest,' [sic] it is only creditors who may obtain relief from the automatic stay." *Id.* (citing H.R.REP. No. 95-595, (1978), *reprinted in* 1978 U.S.C.C.A.C. 5787, 6136 ("Creditors may obtain relief from the stay if their interests would be harmed by continuance of the stay.")). It follows from the Second Circuit's analysis that unless Wells Fargo qualifies as a "creditor," it does not have standing to request relief from the automatic stay.

Section 101(10) of the Bankruptcy Code defines a "creditor" as an:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

**\*3** (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

11 U.S.C. § 101(10). This definition requires consideration of what constitutes a "claim," which conveniently is also a defined term in section § 101(5) of the Bankruptcy Code.

Section 101(5)(A) of the Bankruptcy Code defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Even under this broad definition, Wells Fargo has not demonstrated its "right to payment" because, as discussed more fully below, it lacks the ability to seek the state law remedy of foreclosure. *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor).

**B. Wells Fargo Lacks Standing to Exercise any State Law Remedies**

[2][3][4][5] Within the context of a bankruptcy proceeding, state law governs the determination of property rights. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (noting that absent an actual conflict with federal bankruptcy law, Congress "has generally left the determination of property rights in the assets of a bankrupt's estate to state law"); *In re Morton,* 866 F.2d 561, 563 (2d Cir.1989). Under New York law "foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- B.R. ----, 2010 WL 4260041 (Bkrtcy.S.D.N.Y.)
**(Cite as: 2010 WL 4260041 (Bkrtcy.S.D.N.Y.))**

debt, the assignment of the mortgage is a nullity." *Kluge v. Fugazy,* 145 A.D.2d 537, 538, 536 N.Y.S.2d 92 (2d Dept.1988) (citing cases); *see also HSBC Bank USA, Nat. Ass'n v. Miller,* 26 Misc.3d 407, 411-12, 889 N.Y.S.2d 430 (N.Y. Sup.Ct., Sullivan County 2009). As the courts in *Kluge* and *HSBC* have recognized, this rule of law dates back over one hundred and forty years, when the New York Court of Appeals held:

[a]s a mortgage is but an incident to the debt which it is intended to secure the logical conclusion is that a transfer of the mortgage without the debt is a nullity, and no interest is acquired from the debt, and exist independently of it. This is the necessary legal conclusion, and recognized as the rule by a long course of judicial decisions.

*Merritt v. Bartholick,* 36 N.Y. 44, 45 (1867). Because Wells Fargo has not offered evidence that it owns the original Note, Wells Fargo lacks standing to foreclose on the Mortgage and has therefore failed to demonstrate it is the holder of a "claim."

[6][7] According to N.Y. REAL PROPERTY LAW § 244, assignments in New York state may be effectuated by the delivery of the relevant note and mortgage. An assignment need not be evidenced by a written assignment. *In re Conde-Dedonato,* 391 B.R. 247, 251 (Bankr.E.D.N.Y.2008) (citing *Flyer v. Sullivan,* 284 A.D. 697, 699, 134 N.Y.S.2d 521 (1st Dept.1954) ("Our courts have repeatedly held that a bond and mortgage may be transferred by delivery without a written instrument of assignment.")). Delivery requires the physical transfer of the instrument from assignor to assignee. *Bank of New York v. Mulligan,* No. 29399-07, 2010 WL 3339452, at *6 (N.Y. Sup.Ct., Kings County Aug. 25, 2010).

**\*4** Wells Fargo has not supplied the Court with any evidence that the Note was physically delivered or assigned pursuant to a written agreement. Here, the Note only indicates a transfer from Lend America to Washington Mutual Bank and not to Wells Fargo. Wells Fargo has not presented any evidence

that it is in possession of the original Note, or that it received the Note via a valid written assignment. Arguably, Wells Fargo has proved that it is the title holder of the Mortgage, as of a date seven days before the filing of the Motion, but the Assignment of Mortgage does not include language assigning the Note along with the Mortgage. Had the assignor desired to assign the Note using the same instrument, it could have used different language to accomplish this end. MCKINNEY'S REAL PROPERTY LAW § 258 [Schedule O], contains a form "Assignment of Mortgage" which clearly assigns both the mortgage and the underlying debt. The form contains the following language:

Know that ........, assignor, in consideration of ........ dollars, paid by ........, assignee, hereby assigns unto the assignee, a certain mortgage made by ........, given to secure payment of the sum of ........ dollars and interest, dated the .... day of ........, recorded on the ........ day of ........, in the office of the ........ of the county of ........, in liber ........ of mortgages, at page ........, covering premises ...., together with the bond or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest,

To have and to hold the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever.

In witness whereof, the assignor has hereunto set his hand and seal this ........ day of ........, nineteen hundred and ........

In presence of:

[8] As one court recently cautioned, "[w]hile an assignor is not required to use statutory Form [sic] O, if it intends to assign the mortgage and the underlying debt, it is well advised to employ language that unambiguously does so." *Deutsche Bank Nat. Trust Co. v. McRae,* 27 Misc.3d 247, 894 N.Y.S.2d 720, 722 (N.Y. Sup.Ct., Allegany County 2010). As Wells Fargo has failed to prove it owns the Note, it has failed to establish that it has standing to pursue

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- B.R. ----, 2010 WL 4260041 (Bkrtcy.S.D.N.Y.)
**(Cite as: 2010 WL 4260041 (Bkrtcy.S.D.N.Y.))**

its state law remedies with regard to the Mortgage and Property.

### C. The Court Has Additional Reservations Regarding the Validity of the Mortgage Assign- ment

[9] In support of its Motion, Wells Fargo annexed a copy of the Mortgage as Exhibit A to the Motion. While there is nothing that undermines the facial validity of the Mortgage, there are issues surrounding the Assignment from MERS, as nominee for Lend America, to Wells Fargo. The September 13, 2010 Assignment suggests that it may have been executed simply for purposes of enabling Wells Fargo to file a lift-stay motion. An assignment in anticipation of bringing a lift-stay motion does not in and of itself indicate bad faith. However, in the absence of a credible explanation, describing how, when and from whom Wells Fargo derived its rights, relief from the stay will not be granted. Second, MERS, as nominee for Lend America, and presumably its Assistant Vice President, John Kennerly, whose signature is on the assignment, have an address in Ocala, Florida. Kennerly's signature on the Assignment was, however, notarized in South Carolina, the address shown on the Assignment for Wells Fargo. Did Kennerly personally appear before the notary as represented? If not, is the Assignment valid? When asked about these issues during the October 20, 2010 hearing, Wells Fargo's counsel was unable to answer any questions about the supporting documents. All of these matters will need to be addressed if Wells Fargo renews its lift-stay motion. Under FED. R. BANKR.P. 9014(a), the Motion to lift the automatic stay created a contested matter. Under that Rule, "No response is required ... unless the court directs otherwise." *Id.* In the event a new lift-stay motion is filed, Debtor's counsel and the chapter 7 trustee are directed to file a response.

### CONCLUSION

*5 For the reasons explained above, Wells Fargo's motion to lift the automatic stay is **DENIED** without prejudice.

**IT IS SO ORDERED.**

FN1. The State of New York's Banking Department website indicates that, "[o]n November 30, 2009, The Federal Housing Administration (FHA) withdrew the FHA approval of ... [Lend America]. As a result, Lend America was prohibited from originating and underwriting new FHA-insured mortgages or participating in the FHA single family insurance program. Effective December 1, 2009, Lend America discontinued its mortgage origination operations. However, the company continues service [sic] mortgage loans." IDEAL MORTGAGE BANKER D/B/A LEND AMERICA,          http://www.banking.state.ny.us/lendamerica.htm (last visited October 21, 2010).

FN2. The Schedules were attached to the Debtor's petition. Schedule A lists Real Property and Schedule D lists Creditors Holding Secured Claims. (ECF Doc. # s 1, 9.)

FN3. The Bankruptcy Code contains a set of federal exemptions and permits debtors to choose between either federal or state exemptions. 11 U.S.C. § 522(b)(1). However, the Bankruptcy Code also permits individual states to "opt-out" of the federal exemption scheme. *See e.g., In re Corio,* 190 B.R. 498, 499 (Bankr.E.D.N.Y.1995). Pursuant to N.Y. DEBT. & CRED. LAW W § 284, New York is one state that has opted-out from the federal exemption scheme. Consequently, the real property exemptions of CPLR § 5206 govern. Contained within CPLR § 5206(a) is New York's homestead exemption, which provides that qualifying

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**--- B.R. ----, 2010 WL 4260041 (Bkrtcy.S.D.N.Y.)**
**(Cite as: 2010 WL 4260041 (Bkrtcy.S.D.N.Y.))**

real property is exempt from "application to [satisfy] a money judgment" if the value of the real property does not "[exceed] fifty thousand dollars in value above liens and encumbrances, [and is] owned and occupied as a principal residence." Qualifying real property under CPLR § 5206(a)(1) includes "a lot of land with a dwelling thereon."

FN4. The Worksheet states: "I certify that the information provided in this form and/or any exhibits attached to this form (other than the transactional documents attached as required by paragraphs 1, 2 and 3, immediately above) is derived from records, that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice." The Worksheet was then signed by Craig C. Zecher, Legal Process Specialist. (ECF Doc. # 9.)

FN5. The facts in *Comcoach* involved a bank, and therefore this language should not be read to exclude from the definition of a "party in interest" the United States Trustee or other corporate or corporeal entities specifically given standing in the Bankruptcy Code or applicable case law.

Bkrtcy.S.D.N.Y.,2010.
In re Mims
--- B.R. ----, 2010 WL 4260041 (Bkrtcy.S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

TANDALA MIMS AKA TANDALA WILLIAMS

        Debtor.

Case No.: 10-14030-mg
(Chapter 7)

Assigned to:
Hon. MARTIN GLENN
Bankruptcy Judge

---

### RELIEF FROM STAY - REAL ESTATE AND COOPERATIVE APARTMENTS

---

I ___Craig C Zecher___ OF WELLS FARGO BANK, NA, (HEREINAFTER, "MOVANT") HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE):

### BACKGROUND INFORMATION

1. REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS MOTION: 1167 GRENADA PLACE, BRONX, NEW YORK 10466

2. LENDER NAME: WELLS FARGO BANK, NA

3. DATE OF MORTGAGE: MAY 10, 2004

4. POST-PETITION PAYMENT ADDRESS: ONE HOME CAMPUS MAC X2302-04C DES MOINES, IA 50328

### DEBT/VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF FILING THE MOTION: $355,398.13 (good through October 1, 2010)
(Note: this amount may not be relied on as a "payoff" quotation.)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY: $430,000.00

7. SOURCE OF ESTIMATED VALUATION: Schedule A & D

## STATUS OF DEBT AS OF
## THE PETITION DATE

8. TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PETITION FILING
DATE: (Good through October 1, 2010)    $355,398.13

    A. AMOUNT OF PRINCIPAL:    $343,427.12

    B. AMOUNT OF INTEREST:    $12,019.98

    C. AMOUNT OF ESCROW (TAXES AND INSURANCE):    $1,960.34

    D. AMOUNT OF FORCED PLACED INSURANCE
    EXPENDED BY MOVANT:    $0.00

    E. AMOUNT OF ATTORNEYS' FEES BILLED
    TO DEBTOR(S) PRE-PETITION:    $0.00

    F. AMOUNT OF PRE-PETITION LATE FEES, IF ANY,
    BILLED TO DEBTOR(S):    $448.50

9. CONTRACT INTEREST RATE: Fixed 6% *(IF INTEREST RATE IS (OR WAS) ADJUSTABLE, PLEASE LIST THE RATE(S) AND DATE(S) THE RATE(S) WAS/WERE IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM; PLEASE LIST THE EXHIBIT NUMBER HERE:_____.)*

10. PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR'S ACCOUNT AND NOT LISTED ABOVE:
    Property Inspection Fees    $60.00
    Title Work Charge    $125.00
    Suspense Amount    ($2,642.81)

## AMOUNT OF POST-PETITION DEFAULT (AS OF 09/14/2010)

11. DATE LAST PAYMENT WAS RECEIVED: June 4, 2010 (applied to suspense)

12. ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING OF PETITION THROUGH PAYMENT DUE ON 09/01/2010 AS THIS IS A CHAPTER 7 CASE, THERE ARE NOW A TOTAL OF 6 CONTRACTUAL PAYMENTS NOW DUE.

13. PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| *04/01/2010 | $2,771.96 | | | | | $89.70 |
| *05/01/2010 | $2,771.96 | | | | | $89.70 |
| *06/01/2010 | $2,771.96 | | | | | $0.00 |
| *07/01/2010 | $2,771.96 | | | | | $0.00 |
| 08/01/2010 | $2,771.96 | | | | | $0.00 |
| 09/01/2010 | $2,771.96 | | | | | $0.00 |
| TOTALS: | $16,631.76 | | | | | $179.40 |

\* AS THIS IS A CHAPTER 7, THERE ARE ALSO 4 PRE-PETITION MONTHLY MORTGAGE PAYMENTS NOW DUE AS LISTED ABOVE.

14. AMOUNT OF MOVANT'S ATTORNEYS FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $650.00

15. AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $150.00

16. OTHER ATTORNEYS' FEES BILLED TO DEBTOR POST-PETITION: $0.00

17. AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $15.00

18. AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

19. AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

20. SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: $2,642.81 (Debtor Funds)

21. AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR ETC.:

Post-Petition MIP/PMI                          $278.22

# EXHIBIT E

# United States Bankruptcy Court

### SOUTHERN DISTRICT OF NEW YORK

In re

TANDALA MIMS, aka Tandala Williams,

                                                            Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE**

Case No.    10-14030 (MG)

To   Wells Fargo Bank, N.A.
     c/o
     Steven J. Baum, P.C.
     220 Northpointe Parkway, Suite G
     Amherst, New York 14228
     Attention: Ehret A. Van Horn, Esq.

Chapter    7

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case on the subject matter of the United States Trustee's application for a Bankruptcy Rule 2004 examination dated

| PLACE | DATE AND TIME |
|---|---|
| Office of the United States Trustee 33 Whitehall Street, 21st Floor New York, New York 10004 | January 19, 2011, at 10 o'clock a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| Office of the United States Trustee 33 Whitehall Street, 21st Floor New York, New York 10004 | January 7, 2011 at 4 o'clock p.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

     Any subpoenaed organization not a party to this proceeding shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable to this proceeding by Rule 7030, Fed. R. Bankr. P.  See Rules 1018 and 9014, Fed. R. Bankr. P.

| ISSUING OFFICER AND TITLE | DATE |
|---|---|
|  |  |

ISSUING OFFICER AND ADDRESS AND PHONE NUMBER
Andrew D. Velez-Rivera
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
(212) 510-0500

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| | | |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45 Fed. R. Civ. P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016 Fed. R. Bankr. P.

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii)

of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept  in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
In re                                                    :    Case No. 10-14030 (MG)
                                                         :
TANDALA MIMS, aka Tandala Williams,                      :    Chapter 7
                                                         :
                          Debtor.                        :
-------------------------------------------------------- x

**ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**
**DIRECTING THE ORAL EXAMINATION OF WELS FARGO BANK, N.A.**
**AND FURTHER DIRECTING THE PRODUCTION OF DOCUMENTS**

Upon the Application of Tracy Hope Davis, the United States Trustee for Region 2 (the

"United States Trustee") for an order (the "Order"): (a) authorizing the issuance of a subpoena

duces tecum compelling Wells Fargo Bank, N.A. ("Wells Fargo") to produce the documents

identified in Exhibit A and attached to the Application, and (b) compelling Wells Fargo to appear

via a duly-authorized representative most familiar with the documents identified in Exhibit A, for

an examination and to answer any and all questions regarding those documents and the topics

identified in Exhibit B attached to the Application, as they relate to the administration of the

bankruptcy estate of the debtor referenced above.  It is hereby:

ORDERED, that the Application is granted, and it is further

ORDERED, that the United States Trustee is hereby authorized to issue a subpoena in a

form substantially similar to the subpoena attached as Exhibit E to the Application (a)

compelling (a) Wells Fargo to produce the documents described in the subpoena subject to any

documents withheld under a claim of privilege to the Office of the United States Trustee by 4:00

p.m. on January 7, 2011, at 33 Whitehall Street, 21ˢᵗ floor, New York, New York 10004,

Attention: Andrew D. Velez-Rivera, and (b) compelling the attendance of Wells Fargo by and through a duly authorized representative most familiar with the documents identified in Exhibit A of the Subpoena and those topics identified in Exhibit B of the subpoena, to testify at an examination on January 19, 2011, beginning at 10:00 a.m., and continuing from day to day until completed; and it is further

ORDERED, that Wells Fargo is directed to provide a privilege log in accordance with Rule 7026 of the Federal Rules of Bankruptcy Procedure to the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attention: Andrew D. Velez-Rivera, so as to be received not later than thirty (30) days from the date of service of the subpoena; and it is further

ORDERED, that this Order is without prejudice to the rights of the United States Trustee or other parties in interest to apply for further discovery from Wells Fargo or any other party in interest in this case.

Dated: New York, New York
      December **XX**, 2010

_____
HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE