HEARING DATE: DECEMBER 9 , 2010
HEARING TIME: 10:00 A.M.

LINDA TIRELLI, ESQ.
OF COUNSEL TO DAVID BRODMAN, ESQ.
COUNSEL FOR DEBTOR
ONE NORTH LEXINGTON AVE., 11TH FLOOR
WHITE PLAINS, NEW YORK 10601
PH(914) 946-0860 / FAX(914)946-0870

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION**
-------------------------------------------------------------------X
**IN THE MATTER OF**

**TANDALA MIMS AKA RANDALA WILLIAMS,
DEBTOR**

**CHAPTER 7
CASE NO: 10-14030(MG)**

**OBJECTION TO MOTION FOR
RELIEF FROM AUTOMATIC
STAY BY WELLS FARGO
BANK, NA AND REQUEST FOR
ACCOUNTING
AND CONDITIONAL MOTION
FOR DAMAGES AND FEES**

-------------------------------------------------------------------X

**OBJECTION TO MOTION FOR RELIEF FROM AUTOMATIC STAY
FILED BY WELLS FARGO BANK, NA
AND
REQUEST FOR ACCOUNTING
AND
CONDITIONAL MOTION FOR DAMAGES AND FEES**

**COME NOW** the above-named debtor, Ms. Tandala Mims aka Tandala Williams
(hereinafter "Ms. Mims" or "Debtor"), by and through her attorney(s) of record, Linda M.
Tirelli, Esq. of Counsel to Attorney David Brodman hereby pursuant to court Order, does so
respond and respectfully objects to the Motion for Relief from Automatic Stay filed in this case
by the above named creditor and in support hereof respectfully show unto the Court the
following:

1.  This case was commenced by the filing of a Chapter 7 petition with the clerk of this court

    in the Manhattan division on July 27, 2010.

2.  The Chapter 7 Debtor, Ms. Mims, is a joint owner of real estate located at 1167 Grenada

    Place, Bronx, NY her primary residence (hereinafter the "property").

3.  On or about September 20, 2010, Wells Fargo Bank, NA filed a Motion for Relief from Stay and supporting Memorandum of Law identified as Doc's # 9 and 10, respectively. on the court's ECF system.  Hereinafter, the September 20, 2010 Motion shall be referred to as " Mims I Motion" and the September 20, 2010 Memo shall be referred to as " Mims I Memo."  A copy of  Mims I Motion is attached hereto as **Exhibit "A"** and Mims I Memo is attached hereto as **Exhibit "B"**

4.  The court on its own initiative denied Mims I Motion in a written opinion dated October 27, 2010, a copy of which is attached hereto as **Exhibit "C".**

5.  On November 10, 2010, Wells Fargo Bank and through its attorneys, Steven J Baum PC, filed a second Motion for Relief from Stay and supporting Memorandum of Law, which appear as Docs # 20 and 21, respectively on the court's ECF system.  Hereinafter the November 10, 2010 Motion shall be referred to as "Mims II Motion" and the November 10, 2010 Memo shall be referred to as "Mims II Memo." A copy of  Mims II Motion is attached hereto as **Exhibit "D"** and Mims II Memo is attached hereto as **Exhibit "E"**

6.  The debtor hereby objects to the granting of Mims II Motion for all the reasons set forth herein below.

## I.  FACTUAL ALLEGATIONS

7.  "Mims I Motion" and "Mims II Motion" are similar with exception to the items described further herein below.  Attached to both "Mims I Motion" and "Mims II Motion" are the following supporting documents:

| **Mims I Motion** | **Mims II Motion** |
|---|---|
| Notice of Motion for Termination of Automatic Stay and Application executed by "Ehret A. Van Horn, Esq. of Steven J. Baum, PC"; | Notice of Motion for Termination of Automatic Stay and Application executed by "Dennis Jose, Esq. of Steven J. Baum, PC"; |
| A two (2) page document entitled "Note" bearing the date "May 10, 2004" at page one, identifying the following:<br>1. Lender: "Lend America";<br>2. Borrower(s): Tandala Mims, Lydia Mims and Johnnie Belle<br>2. Principal Sum Borrowed: "$374,037.00";<br>3. Interest Rate: "6.0%"; and<br>4. Monthly Payment of Principal and Interest: "$2242.54";<br>5. Specifically endorsed at the bottom left of page 2 as follows:<br>"Payable to the Order of: <u>Washington Mutual Bank, FA</u> Without Recourse, Lend America" and is signed by "HeleneDeCillis, Vice President" | A two (2) page note with identical content *except that it appears to be either a completely different document.* For example there are hole punch marks on the Mims I Note which do not appear on the Mims II Note. There is a bar code on the top of the Mims I Note not present at the top of the Mims II Note and a barcode at the bottom of the Mims II Note not present on the Mims I Note.<br><br>There are what appear to be blackened permanent marker cross-out items which do not match as between the documents. There appear to be "√" marks throughout the body of the Mims I Note which do not appear on the Mims II Note. The size of the font also appears different leaving the reader to guess whether this is a set of copies from the same original or if the original is being altered or perhaps there are two originals or copies are being manipulated.<br><br>The following endorsement appears stamped on the Note attached to Mims II Motion which was <u>not</u> on the Note attached to the original Mims I Motion:<br><br>A second added endorsement at the bottom right of page 3 as follows: "PAY TO THE ORDER OF _____ WITHOUT RECOURSE, WASHINGTON MUTUAL BANK,FA" |

| | |
|---|---|
| | and is signed "Brenda F. Brendle, First Vice President"<br><br>Given the other discrepancies between the two versions of the Note offered by the creditor, it is not clear as to when the second endorsement was stamped on the document. Moreover, Mr. Craig Zecher, as discussed below, certified the documents in both filings.[1]<br><br>For side by side comparison purposes, a copy of first the Mims I Note and the Mims II Note are attached as  **Exhibit "F"** |
| A two (2) page "Recording and Endorsement Page" and an eight (8) page document entitled "Mortgage" bearing the date "May 10, 2004" and which identifies the roles of certain parties, reading in relevant part as follows:<br>1. "Mortgagor": Tandala Mims, Lydia Mims and Johnnie Belle;<br>2. "Lender": Lend America; and<br>3. "Nominee" is identified as MERS "For Purposes of Recording this Mortgage, MERS is the Mortgagee of Record."[2] | SAME |
| A curious single page document **"Assignment of Mortgage"** dated post-petition on  September 13, 2010 identifying the following parties and information:<br><br>1.   Original Lender: "Mortgage Electronic Registration Systems, Inc. as Nominee for | SAME |

---

[1] According to the Mims II Memo, the Mims I Note is an older copy.  However both are certified as "true and accurate copies of the original documents" as per the respective certifications of Mr. Craig C. Zecher dated September 16, 2010 and again on October 29, 2010.  It seems that Mr. Zecher therefore certified the second endorsement (from Washington Mutual Bank FA to _____) was not present on the original Note as of September 16, 2010.  It further appears that Mr. Craig C. Zecher certifies that said second endorsement is present on the original Note as of October 29, 2010.  **The question now remains, when, whom and with what authority was the second endorsement affixed to the Note post petition and without leave from the court?**

[2] It is worth pointing out that the undersigned is unable to ascertain from the documents provided when or if MERS was ever identifies as a "Nominee" or "Mortgagee" for any purpose other than recording.

| | |
|---|---|
| Lend America" | |
| 2. Assignor: "Mortgage Electronic Registration Systems, Inc as nominee for Lend America" ; | |
| 3. Assignee: "Wells Fargo Bank, NA" | |
| 4. Signed by "John Kennerty, Assistant Vice President" ( presumptively of the assignor[3]) notarized in York County, South Carolina by Notary, Wendy Albertson Al-Hammadi | |
| A five (5) page declaration by Mr. Craig C. Zecher, "Legal Process Specialist" dated September 16, 2010 which indicates the purported calculation of debt and certifies the transactional documents as true and accurate copies of the originals.[4] | SAME except that certain dates have been adjusted to reflect a month's passage since Mims I Motion. The Craig C. Zecher declaration attached to Mims II Motion is dated October 29, 2010. |
| NOT ATTACHED | Affidavit of John Kennerty dated November 8, 2010 before Notary, Carolyn M. Evans. Mr. Kennerty claims that Wels Fargo "became the holder of the Note April 14, 2010" but fails to explain how and in what capacity Wells Fargo may be acting as a "holder." |
| NOT ATTACHED | "Corporate Resolution" signed by William C. Hultman as the Corporate Secretary of Mortgage Electronic Registration Systems, Inc. dated August 16, 2010. |

8. The purported "Assignment of Mortgage" listed hereinabove, (hereinafter "Kennerty AOM") is notably unrecorded. A copy of the "Kennerty Assignment of Mortgage" is attached here to as **Exhibit "G."**

## II. LEGAL ARGUMENT: LACK OF REQUIRED DOCUMENTATION AND FRAUD ON THE COURT

---

[3] It is worth noting that in the Mims II Memo, attorney for the creditor explain Mr. Kennerty is an employee of Wells Fargo but also act as an officer of "Mortgage Electronic Registration Systems, Inc as Nominee for Lend America" but fails to indicate any inherent conflict of interest the dual roles present.

[4] The debtor hereby reserves her right to demand a full accounting and explanation of the use of so-called "suspense account" which is not provided for in the loan documents and violates the Truth in Lending Act as amended in 2009 mandating that all payments be credited to a consumer's account the same day as received.

9.  The Debtor avers that the purported "Kennerty AOM" annexed to Wells Fargo's proof of
claim is signed by "John Kennerty" on post-petition date of September 13, 2010, initially
as an attachment to Mims I Motion, without any supporting documentation to
substantiate his authorization to do so.  However, after the court's denial of the Mims I
Motion, the creditor supplemented the Kennerty AOM with a so-called "Corporate
Resolution" from MERS, signed by "William C. Hultman, Corporate Secretary of
Mortgage Electronic Registration System" Dated August 16, 2010.  The debtor questions
the timing and effectiveness of the Corporate resolution and thought the court would be
interested in the testimony of Mr. William Hultman regarding the nature of such
Corporate Resolutions.  Attached is a deposition of Mr. William Hultman in the case of
"Henderson v. Merscorp, et al" dated November 11, 2009 and a second deposition of Mr.
William Hultman in the case of Bank of New York as Trustee et al v. Ukpe dated April 7,
2010 hereinafter referred to as the "Henderson" and "Upke" depositions and attached
here to as **Exhibit "H"** and **Exhibit "I"**, respectively. [5]

10.  To summarize Mr. Hultman's prior sworn testimony, he routinely signs such Corporate
Resolutions upon request of MERS, Inc. members and no actual paper original of a
Resolution adopted by the Board of Directors actually exists, even though the Corporate
Resolution reads at the last paragraph that Mr. Hultman certifies that it is a "true copy of
a Resolution duly adopted by the Board of Directors of said corporation …" ( see Upke
Deposition at pages 164-166).  Mr. Hultman testified that he cannot produce any
documentation to specifically evidence his authority to appoint officers other than
certifying officers ( ie., Assistant Secretary or Vice Presidents)  (See Upke Deposition

---

[5] The full transcript of each deposition while bulky is attached so as to ensure all testimony can be read in context.

pages 100-129)Mr. Hultman testified that even though it is his role as Corporate

Secretary to take minutes during the meeting which allegedly resulted in a decision to

bestow him with the authority to name certifying officers he cannot say for certain if

records of such meetings and resolution actually exist. (See Henderson at pages 23 -25)

The court should also know that it is Mr. Hultman's testimony that there are "thousands"

of MERS certifying officers, but none are employees of MERS.  In fact, Mr. Hultman

testifies that MERS has no employees, just thousands of certifying officers and corporate

officers.[6]  (Upke Deposition Pgs 49-50; 69-71;and105; Henderson Deposition pages 26;

79-80)

11. The Debtor further avers that the assignment presented in this case is of fraudulent nature

and of questionable origin.  Specifically, "John Kennerty" is not an appropriate party to

sign and/or authorize such assignments on behalf of "Mortgage Electronic Registration

Systems, Inc. as nominee for Lend America"  As the Court pointed out in footnote 1 page

2 of Mims I Opinion, the purported lender/Assignor was in troubled waters:

> Effective December 1, 2009, Lend America discontinued its mortgage origination
> operations. However, the company continues service [sic] mortgage loans." IDEAL MORTGAGE
> BANKER D/B/A LEND AMERICA, http://www.banking.state.ny.us/lendamerica.htm (last visited October
> 21, 2010).

12. The court should also know that an Order revoking the license of IDEAL MORTGAGE BANKER

D/B/A LEND AMERICA issued on February 12, 2010

http://www.banking.state.ny.us/ea100212.htm  The undersigned upon further research

learned that while the corporate entity remains listed as "active" with the New York State

Secretary of State, there is no active telephone number for the Long Island based entity

---

[6] It should be noted that there is a distinction between "MERS Inc." which has no employees and thousands of
certifying officers and "MERSCORP", the parent company which has only 46-47 employees ( see Henderson
Deposition Pages 79-80)

and the website listed with the New York State Banking Department  for this entity,

www.lendamerica.com has but one page which reads, "FOR SALE."  The viability of this purported

Assignor cannot be confirmed and all indications are that the company is simply defunct.  This of course

begs the question of what personal knowledge Mr. Kennerty could have possessed at the time of the

assignment and who were his contacts at Lend America on the date of the assignment.   Clearly if Mr.

Kennerty had been an actual person with authority to assign a mortgage for Lend America, he would have

known the status of the company.  It is also worth noting that one cannot ascertain the active status of a

MERS member without actually being a member of MERS.  Attached is the screen shot from

www.mersinc.org online tool for verifying a member's active status.  Whether or not Lend America was

even active in the MERS system as of the date of this response is unknown.


13.  The Debtor avers that under the rules of MERS membership, Mr. Kennerty may not be an appropriate

person to serve as a certifying officer.   According to the testimony of Mr. R.K. Arnold, CEO of

MERSCORP, parent company of Mortgage Electronic Registration Systems, Inc., in the case of Henderson

v. MERSCORP ( copy attached as **Exhibit "J"**)   its "members" request certain parties be names as

certifying officers of MERS and that pursuant to the membership rules, the parties offered up to become

certifying officers are supposed to be corporate officers of the members with authority sufficient to bind the

member. ( see Arnold Deposition pages 105-107).  Mr. Kennerty testified at deposition in the case of

Lydia Geline v. Northwest Trustee Services, Inc., et al ( copy attached as **Exhibit "K"**) that his title is

"Loan Administration Manager" (See Kennerty Deposition pg. 7) and that he is also the "Vice President of

Loan Documentation" at Wells Fargo ( See Kennerty Deposition pg. 7-8).  Based on his further testimony,

Mr. Kennerty is not a corporate officer and does not use the title of vice president on internal documents (

ex. performance reviews) but that he only uses his title of Vice President of Loan Documentation when he

carries out his duties of executing documents including Assignments, Declarations and Affidavits in

connection with foreclosures and relief from stay in Bakruptcy ( See Kennerty Deposition page 8-12).

14. The Court pointed out at pages 8-9 of Mims I Opinion, that it has reservation regarding

the validity of the purported Kennerty Assignment of Mortgage.  The Court points out

that the timing of the  Kennerty AOM  is questionable and that the document is notarized

in the state of South Carolina, yet purported assignor indicates an address in Ocala,

Florida.  The court stated that "in the absence of a credible explanation, describing how,

when and from whom Wells Fargo derived its rights, relief from the stay will not be

granted."  The debtor avers that to date the creditor has failed to fully explain the

assignment and has, if anything, only further implicated itself in a scheme to deceive the

court and the debtor as to the nature and validity of the assignment of mortgage.  As the

creditor points out in Mims II Memo, and supporting affidavit, Mr. Kennerty is not an

employee let alone an officer of the assignor "Lend America" at all.  Mr. John Kennerty

is an employee of Wells Fargo.  How is it that an employee of Wells Fargo can assign a

mortgage from Lend America to Wells Fargo?   Furthermore, as the Note attached to

Mims I Motion and Mims II Motion both bear endorsements indicating transfers from

Lend America to Washington Mutual Bank, FA.  No indication as to the transfer of the

mortgage from Lend America to Washington Mutual Bank, FA is present in the record –

period.  It appears the Note has been separated from the Mortgage in that the two

documents have taken different paths and did not transfer together.  If the Kennerty

Assignment of Mortgage is to be believed, while the Note at some point in time may have

been transferred from the originating lender, Lend America, to Washington Mutual Bank,

FA, the security instrument was not transferred but rather stayed with Lend America.

The note separated from the mortgage is unenforceable as a secured debt.

15. Wells Fargo offers no explanation as to when (or if) transfers of the Note and Mortgage actually occurred. The court may take judicial notice however of the fact that according to the FDIC records, Washington Mutual Bank, FA changed its name to Washington Mutual Bank in April 2005, and entity which ceased to exist by any name as of September 2008. The Washington Mutual Bank History per FDIC online records are attached hereto as **Exhibit "L"** . It would follow that the first endorsement, if valid, would have occurred prior to the name change. Further attached as **Exhibit "M"** is a mortgage statement dated May 14, 2007 from Wells Fargo Home Mortgage to the Debtor.[7] The dates on the Kennerty AOM do not fit together with the history of the Debtor's loan nor the date Mr. Kennerty calims Wells Fargo became the "holder" of the Note. Was there ever an assignment of mortgage from Lend America to Washington Mutual? When did Wells Fargo acquire an interest in the Note or the Mortgage? Where are the records of these transfers?

16. The court should also consider the fact that Wells Fargo is not the owner of the Note at all and if it produces the original with the latest blank endorsement, further inquiry should be made as to the nature of its possession as a possible custodian for the true owner and real party in interest. Using the copy of the note received by the borrower at closing, (attached as **Exhibit "N"**) the undersigned was able o ascertain the original loan number and using the online tool provided by MERS at www.Mersinc.org learned the MERS Identification Number of the loan ( "MIN") to be 1002862-1000008390-5. Plugging this number into the online tool available at www.mers-servicerid.org it is

---

[7] While the debtor avers that she has been paying money to Wells Fargo since 2006, this was the oldest statement she could find in her records.

apparent that MERS identifies the servicer as "Wells Fargo – Acquisition, Minneapolis,

MN"  It is also apparent that in addition to Wells Fargo being a servicer, there is a third

party investor for this loan identified as *" Investor:  This investor has chosen not to*

*display their information. For assistance, please contact the servicer."* A copy of the

screenshot containing the information from the MERS online tool is attached as **Exhibit**

**"O"**

17. The Court should further know that Mr. Kennerty has also signed numerous documents

recorded on land records and in at least SEVEN (7) other State and Federal court cases

throughout the United States, **including at least TWO in currently pending in SDNY**.

In each document including that in the instant case, Mr. Kennerty's signature appears

identical yet his title changed with each document as follows:

| **CASE / RECORD** | **DOCUMENT TYPE AND DATE** | **TITLE USED BY MR. KENNERTY AS SIGNER** | **STATE** |
|---|---|---|---|
| In re Cynthia Carssow Franklin, Ch13 Debtor SDNY case # 10-20010(rdd) POC #1-1 AND POC#1-2[8] | Assignment of Mortgage **July 12, 2010** | Asst. Secretary of Mortgage Electronic Registration Systems, Inc. as **Nominee for Washington Mutual Bank, FA**[9] | New York |
| In re Carlos Mota, Ch 13 Debtor SDNY Case #10-13989 POC #3-1[10] | Assignment of Mortgage **August 13, 2010** | Asst. Secretary of Mortgage Electronic Registration Systems, Inc. as **Nominee for MLD Mortgage, Inc.** | New York |
| Wells Fargo Bank, NA v. Juan Vasquez | "Affidavit of Merit and Amount Due in Support | Vice President of Loan Documentation, **Wells** | New York |

[8] The Court should further note an objection to Proof of Claim in the case of In re Franklin is scheduled for hearing in January 2011 before the Honorable Judge Drain.

[10] The Court should note that the undersigned is preparing an objection to proof of claim to be filed near simultaneously with this instant opposition, to be heard before the Honorable Judge Chapman.

| | | | |
|---|---|---|---|
| Alvarenga, et al Supreme Court Suffolk County New York, Index #39286/09 | of Application for an Order of Reference and Compliance with CPLR 3408"  **February 14, 2010** | **Fargo Bank, NA** | |
| Wells Fargo Bank, NA vs.  Ingraham et al | Assignment of Mortgage  **September 7, 2010** | Asst. Secretary of Mortgage Electronic Registration Systems, Inc. as **Nominee for AM Trust Bank** | New York |
| HSBC Bank USA, National Association, As Trustee for Luminent Mortgage Trust 2007-2 vs. Michael J. Greto, et al  Circuit Court of the Nineteenth Judicial Circuit Indian River County, FL Case # 31-2009-CA-011437 | Affidavit as to Lost or Misplaced Original Note  **October 13, 2009** | VP of Loan Documentation of **America's Servicing Company** | Florida |
| Wells Fargo Bank, NA vs. Chad Yoder et al  Circuit Court of the Eighteenth Judicial Circuit Brevard County, FL Case #05-2010-CA-010712 | Affidavit As to Amounts Due and Owing  **April 1, 2010** | VP Loan Documentation **Wells Fargo Bank NA as Successor By Merger to Wells Fargo Home Mortgage, Inc.** | Florida |
| Wells Fargo Bank, NA vs. Glenn Carlo Holcomb, et al | Affidavit As to Amounts Due and Owing  **October 13, 2009** | VP Loan Documentation **Wells Fargo Bank NA as Successor By Merger to Wells Fargo Home Mortgage, Inc.** | Florida |
| Land Records | Affidavit in support of Massachusetts Foreclosure Deed By Corporation  **December 15, 2009** | VP Loan Documentation/ **Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF11 by Attorney In Fact Wells Fargo Bank, NA** | Massachusetts |
| Land Records | Power of Attorney  **October 12, 2009** | VP Loan Documentation/ **Attorney In Fact Wells Fargo Bank, NA** | Massachusetts |
| In re Nguyen Chapter 13 | Allonge | VP Loan | Washington |

| Case # 10-44323 Western District of Washington POC # 4-1 | Endorsement to [blank]  **Undated** | Documentation/ **Wells Fargo Bank, NA** | |
|---|---|---|---|

The collection of ten (10) documents signed by Mr. Kennerty is further summarized in the table

prepared by the undersigned attached hereto as **Exhibit "P"** together with copies of all of said

documents.

18. To the extent that Mr. Kennerty by any name is a Vice President of Loan Documentation

at Wells Fargo Bank, NA, as stated under oath in several of the aforementioned

documents signed by him, the debtor avers that Mr. Kennerty would have a serious

conflict of interest acting as an officer of both the Assignor and the Assignee in the

instant case.  The Debtor avers that the more likely scenario is that Mr. Kennerty  is not

who he purports to be in the Assignment of Mortgage and that Mr. Kennerty lacks any

personal knowledge and any authority to actually transfer the asset of any entity in the

instant case.

19. The Debtor hereby avers that the Assignment of Mortgage presented by Wells Fargo

Bank, NA in the case at bar to be a fraudulent document fabricated and presented under

oath subject to penalty of perjury with the intention and purpose of misleading the Court,

the Debtor, and all parties affiliated with Ms. Mim's Bankruptcy case.

20. That Wells Fargo does not represent itself to the court to be a servicer acting on behalf of

a secured creditor and instead is holding itself out to be the real party in interest.  That

Wells Fargo sloppily attempts to portray itself as the real party in interest when in fact it

is at best a servicer   and has failed to provide verification of its status and relationship, if

any, to this case.

21. The Court should know that the signer, Mr. John Kennerty, testified, in relevant part, that

he is engaging in what can only be described as "robo-signing" activities for his

employer, Wells Fargo,  as follows: :

> A-*"With Wells Fargo, I am a loan administration manager
> managing our default document group"*
> Q-*"Why don't you tell me what your job duties are of that."*
> *(sic.)*
> A-*"There's three main areas within the default doc group.  The
> first one is the ordering and obtaining of the collateral
> documents for loans.  The assignment team, the execution of
> assignments, as well as the executable team which is the
> executing of other foreclosure related documents." (Trans. Pgs.
> 6-7)*
>
> Q- *"Are you also vice president?"*
> A-*"Of Loan Documentation"…*
> Q- *"Have you had the vice president title since you became
> employed there?"*
> A-*"Shortly thereafter."*
> Q- *"So the official title is Vice President of Loan
> Administration?"*
> A-*"No."*
> Q-*"Im sorry.  Can you-"*
> A-*"Vice President of Loan Documentation." (Trans. Pgs. 7-8)*
>
> Q-*"How often do you actually sign documents?"*
> A-*"Daily"*
> Q-*"Can you tell me about how many documents you sign a
> day?"*
> A-*"Anywhere from 50 to 150." (Trans. Pgs. 8-9)*

22. This court is not immune to the climate of the times and coined term of art, "Robo-

Signer."  To the extent Mr. Kennerty executes anywhere from 50-150 documents per day,

between 250 – 750 per week, which amounts to 13,000 -39,000 per year, the Debtor

avers that Mr. Kennerty is a "robo-signer" ie., an individual paid to sign documents such as the assignment of mortgage in the instant case, without regard or knowledge of the truth of the information contained in such documents.

Furthermore, to the extent Mr. Kennerty is an employee of the Assignee, namely Wells Fargo Bank,NA  it would be a conflict of interest for Mr. Kennerty to simultaneously represent the Assignor, namely Lend America, an apparent shell entity as aforesaid and be employed by the Assignee, Wells Fargo Bank, NA.  Clearly the assignment of mortgage presented by Wells Fargo in this case is a manufactured document intended to defraud the Court, the United States Trustee, the Debtor and all other parties effected by the instant bankruptcy case.

### III.   LEGAL ARGUMENT: THE ASSIGNMENT OF MORTGAGE IS A VIOLATION OF BANKRUPTCY CODE SECTION 362 (a)(4)

23. Section 362(a)(4) of the United States Bankruptcy Code reads as follows:

"(a)…..a petition filed under section 301, 302, and 303 of this title, ….operates as a stay, applicable to all entities, of…

(4) any act to create, perfect, or enforce any liens against property of the estate;"

The assignment of mortgage is an attempt to create, perfect or enforce a lien against property of the estate in violation of §362(a)(4) of the U. S. Bankruptcy Code.

There can be no reason for the "assignment" of the mortgage to Wells Fargo other than to perfect or attempt to perfect a claim in the residential real estate or to transfer property of the bankruptcy estate.

## IV.   LEGAL ARGUMENT: THE ASSIGNMENT OF MORTGAGE IS A VIOLATION OF BANKRUPTCY CODE SECTION 362 (a)(5)

24.  Section 362(a)(5) of the United States Bankruptcy Code reads as follows:

"(a).....a petition filed under section 301, 302, and 303 of this title, ....operates as a stay, applicable to all entities, of…

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that lien secures a claim that arose before the commencement of the case under this title;"

25. The assignment of mortgage is an attempt to create, perfect or enforce a lien against property of the Debtor, based upon an alleged claim that arose before the commencement of this case and is therefore in violation of §362(a)(5) of the U.S. Bankruptcy Code.

26. There can be no reason for the "assignment" of the mortgage to Wells Fargo other than to create, perfect or enforce a lien against property of the Debtor which arose prior to the commencement of the instant bankruptcy case.

## V.      LEGAL ARGUMENT: WELLS FARGO BANK, NA LACKS STANDING TO FILE A MOTION FOR RELIEF FROM STAY

27. According to the information provided by Wells Fargo Bank, NA and that available

online at www.MERSInc.org as aforesaid the debtors loan is not owned by Wells Fargo

Bank, NA but rather by an unknown investor. Wells Fargo Bank, NA in the instant case

is, at best, a mortgage loan servicer. It neither asserts a beneficial interest in the note, nor

could enforce the note in its own right.

**28.** A federal Court cannot have jurisdiction unless a party has constitutional standing. The

creditor fails to provide any credible evidence as to if and when a negotiation of the Note

to Wells Fargo or its principle actually occurred. The specific endorsement on the Note

followed by an endorsement in blank leaves the court and the debtor to guess when any

negotiation of the note occurred.[11]

**29.** Wells Fargo Bank, NA, if a servicer is not a creditor and has failed to provide any

evidence that it currently holds Debtor's note or any evidence of its own authority. Wells

Fargo Bank, NA is therefore, not a creditor nor a real party in interest and has no standing

to file the instant motion.

## VI.  WELLS FARGO BANK, NA LACKS STANDING AS PER APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE AND BANKRUPTCY PROCEDURE

30. In the bankruptcy courts, procedure is governed by the Federal Rules of Bankruptcy and

Civil Procedure. Procedure has an undeniable impact on the issue of "who" can assert a

claim as a holder, because pleading *and* standing issues which arise in the context of our

---

[11] The undersigned verified with an online retailer that for a mere $12.99, the rubber stamp blank endorsement can
be replicated.

federal court system. According F.R.Civ. Pro. 17, *"[a]n action must be prosecuted in the name of the **real party in interest**."* (emphasis added)

31. A Motion for Relief From Stay, is a contested matter, governed by F. R. Bankr. P. 9014(a), which makes F.R. Bankr. Pro. 7017 applicable to such motions. F.R. Bankr. P. 7017 is, of course, a restatement of F. R. Civ. P. 17.

32. The Debtor avers that the *real party in interest* in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the *owner* of a note. Because the actual name of the actual note holder is not stated, Wells Fargo's very claim asserted via motion is defective.

33. In the case of Deutsche Bank Nat'l Trust Co. v. Steele, 2008 WL 111227 (S.D. Ohio) January 8, 2008, the Honorable Judge Abel found that Deutsche Bank had filed evidence in support of its motion for default judgment indicating that MERS was the mortgage holder. There was not sufficient evidence to support the claim that Deutsche Bank was the owner and holder of the note as of that date. In following In re Foreclosure Cases, 2007 WL 456586, the Court held that summary judgment would be denied "until such time as Deutsche Bank [the movant] was able to offer evidence showing, by a preponderance of evidence, that it owned the note and mortgage when the complaint was filed." 2008 WL 111227 at 2. Deutsche Bank was given twenty-one days to comply. Id.

34. In a decision on March 10, 2009, the Honorable Philip H. Brandt, US Bankruptcy Judge for the Western District of Washington cited the matter of In Re Jacobson , 19 CBN 522 (Bankr. W.D. Wash. 2009) and denied a motion filed by a servicing agent for lack of

standing because it was not brought in the name of the party who had the right to enforce

a deed of trust and did not establish that the movant was authorized to act on behalf of the

party who had such right.

35. In the case at bar, the claimant, Wells Fargo Bank, NA, establishes only that it is neither

the holder nor the owner of the note. Wells Fargo neither asserts that it has a beneficial

interest in the specifically endorsed Note affixed to Mims I Motion and further offered no

viable explanation for the "convenient" new endorsement appearing on the note affixed

to Mims II Motion except that the former was an older copy.  This explanation does not

hold water in that the attestation of Mr. Craig C. Zecher affirmed it was a true and correct

copy of the transactional documents.    Inso far as Wells Fargo Bank, NA is a loan

servicer, it cannot enforce the note in its own right in that according to the information in

the attached documents and the information available through MERS, the loan is owned

by an unnamed investor with which Wells Fargo has not established its relationship.

## VII.  WELLS FARGO BANK, NA LACKS CONSTITUTIONAL STANDING TO SEEK RELIEF IN A FEDERAL COURT

36. The United States Constitution Article III §2 specifically limits the jurisdiction of the federal

courts to "Cases or Controversies." Justice Powell delivered the Opinion of the Supreme

Court in the case of Warth v. Seldin addressing the question of standing in a federal court as

follows:

"In essence, the question of standing is whether the litigant is entitled to have the court decide the
merits of the dispute or of the particular issues. This query involves both constitutional limitations on
federal court jurisdiction and prudential limitations on its exercise. In its constitutional dimension,
standing imports judiciability: whether the plaintiff has made out a "case or controversy" between
himself and the defendant within the meaning of Art.III. This is the threshold question in every
federal case, determining the power of the court to entertain the suit. As an aspect of judiciability, the

standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal –court jurisdiction and to justify exercise of the court's remedial powers on his behalf. Baker v. Carr 369 U.S.186,204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663(1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party…A Federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threat or actual injury resulting from the putatively illegal action…" Linda R.S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146,1148, 35 L.Ed.2d 536 (1973)." Warth v. Seldin 422U.S.490, 498 (1975)

"Apart from this minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers. … even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, this Court has held that the **plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties**. E.g., Tilestion v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943)." Warth v. Seldin 422U.S.490, 499 (1975) (**emphasis added**)

37. The Debtor in the instant case reiterates that a party seeking relief in any Federal Court

"bears the burden of demonstrating standing and must plead its components with specificity."

*Coyne v American Tobacco Company, 183 F.3d 488, 494 (6th Cir. 1999)*. Again, the

minimum constitutional requirements for standing are: proof of injury in fact, causation, and

redressability. *Valley Forge Christian College v Americans United for Separation of Church*

*& State, Inc., 454 U.S. 464, 473 (1982)*. Furthermore, in order to satisfy the requirements of

Article III of the United States Constitution, any claimant asserting rights in a Federal Court

must show he has personally suffered some actual injury as a result of the conduct of the

adverse party. *Coyne, 183 F.3d at 494; Valley Forge, 454 U.S. at 472*.


38. Wells Fargo may only be a servicer and while a servicer may be able to bring a claim on

behalf of its principle, it must disclose the identity of its principle to the court and set forth a

valid claim of its principle.


39. As set forth hereinabove, the Clamant can make no assertions as to its own interest in the

outcome of the instant claim it is making, nor does Movant make any mention of any

perceived injury to itself. Instead, Movant presumably seeks to redress an alleged wrong to

what is presumed to be a third party or parties, (ie, the holder and owner of the Debtor's Note

and Mortgage) and thus the Movant in the case at bar lacks standing in a federal court.

Movant cannot bring this claim without properly either identifying direct injury or threat of

injury to itself or by joining a real party in interest.

40. The minimum constitutional requirements for standing in a federal court are: proof of injury

in fact, causation and redressability. Valley Forge Christian College vs. Americans United for

Separation of Church & State, Inc. 454 U.S. 464, 472 (1982). In its Motion for Termination

of Automatic Stay, JP Morgan Chase refers to itself as a "secured creditor." (see first

paragraph in both Movant's pleadings "Application" and "Supplemental Affirmation in

Further Support of Motion for Temination of the Automatic Stay") However, the Movant has

not shown that it has any stake in the ownership of the Note and Deed of Trust as either a

holder or owner. Any attempt to indicate itself as an owner of the loan has been by way of

fraudulent and misleading documents.


41. It is well anticipated that Wells Fargo will respond to this objection by asserting that the

assignment, regardless of validity, is unnecessary.  This phenomenon of submitting written

assignments and then arguing they are of no consequence or otherwise "unnecessary," is not

unique to the documents submitted in this Federal Court . In a February 2009 decision Wells

Fargo Bank, N.A., as Trustee for First Franklin Mortgage Loan Trust 2006-FF15, Mortgage

Pass Through Certificates, Series 2006-FF15 v. Sem M. Sait Aubin, et al 2009 NY Slip Op

50197(U) (copy attached) NY Supreme Court Judge Arthur Schack was concerned for the

authenticity and motivation behind certain assignments in deciding a motion for summary

judgment in a foreclosure action. J. Schack denied plaintiff's motion expressing the court's

reservations as to a series of two questionable assignments , "…the Court requires an

explanation from an officer of plaintiff Wells Fargo explaining why, in the midst of our

national subprime mortgage financial crisis, plaintiff Wells Fargo purchased from MERS, as

nominee for First Franklin, a nonperforming loan." And further noted that the motion was

denied without predjudice provided the moving party, but 60 days to provide documentation

which in part would , "(2) an affidavit from an officer of plaintiff, WELLS FARGO BANK,

N.A. AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF15,

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FF15, explaining why

plaintiff took the September 10, 2007 assignment of the instant nonperforming loan, 102 days

in arrears, from MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., as

nominee for FIRST FRANKLIN, A DIVISION OF NATIONAL CITY BANK; Wells Fargo

v. Sait Aubin p. 6


42. J. Arthur Schack when presented with written assignments of questionable nature in foreclosure

actions has routinely not permitted the Plaintiff to switch gears after submitting such writings to

later claim that no writing is required. In fact , Judge Schack has taken the position that once a

writing is submitted, the court will require a thorough and complete verification of its

authenticity. Judge Schack has repeatedly denied plaintiffs motions in foreclosure actions

requiring additional verification pertaining to the authenticity of submitted assignments. WELLS

FARGO BANK, N.A., as Trustee for FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-

FF15, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FF15 v. SEM M.

SAINT AUBIN, ET. AL. 37401/07 Supreme Court of the State of New York, Kings County,

Decided February 10, 2009. ; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee

Under Pooling and Servicing Agreement Dated as of April 1, 2007 Securities Asset Backed

Receivables, LLC Trust 2007-BR2 Mortgage Pass-through Certificates, Series 2007-br2 v.

LINDA BAILEY, ET. AL. 2009 NY Slip Op 50191(U) 3747/08 Supreme Court of the State of

New York, Kings County Decided February 9, 2009.; INDYMAC BANK, FSB v. RANDOLPH

BETHLEY; SONIA BADILLO ROSADO, ET. AL. 2009 NY Slip Op 50186(U) 9615/08

Supreme Court of the State of New York, Kings County Decided February 6, 2009.

43. The debtor further objects to the falsified document Wells Fargo purports to be an
assignment submitted to this court in support of its two attempts at a Motion for Relief fro
Stay  are void under 11 U.S.C. §362. In fact, the so-called assignment has done little except
to create a cloud on the public record of this court proceeding by creating a discrepancy as to
the chain of assignment of the mortgage.

44. As one Court described the bank's burden to show standing: "If the claimant is the original
lender, the claimant can meet its burden by introducing evidence as to the original loan. If the
claimant acquired the note and mortgage from the original lender or from another party who
acquired it from the original lender, the claimant can meet its burden through evidence that
traces the loan from the original lender to the claimant. A claimant who is the servicer must,
in addition to establishing the rights of the holder, identify itself as an authorized agent for
the holder."  Maisel, 378 B.R. at 22 (quoting In re Parrish, 326 B.R. 708, 720 (Bankr. N.D.
Ohio 2005)).

45. Here, Wells Fargo (possibly as Servicer)  has not demonstrated its standing to file a claim.
The documents presented shows that Wells Fargo may be as Servicer is not the holder of the
note and Deed of Trust.   Accordingly, the Debtor's Objection should be sustained and relief
granted.

## VIII.  LEGAL ARGUMENT: THE ASSIGNMENT OF MORTGAGE , IF AUTHENTIC, GIVES RISE TO VIOLATION 15 U.S.C. 1641 (F) AND STATUTORY DAMAGES PURSUANT TO 15 U.S.C. 1640(A)

46. Recent amendments to Section 404 of Public Law 111-22 reads in relevant part as

follows:

### SEC. 404. NOTIFICATION OF SALE OR TRANSFER OF MORTGAGE LOANS.

(a) IN GENERAL.—Section 131 of the Truth in Lending Act
(15 U.S.C. 1641) is amended by adding at the end the following:

‘‘(g) NOTICE OF NEW CREDITOR.—
‘‘(1) IN GENERAL.—In addition to other disclosures required by this title, **not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer**,

 ‘‘(A) the identity, address, telephone number of the
new creditor;

‘‘(B) the date of transfer;

‘‘(C) how to reach an agent or party having authority
to act on behalf of the new creditor;

‘‘(D) the location of the place where transfer of ownership
of the debt is recorded; and

‘‘(E) any other relevant information regarding the new
creditor.

‘‘(2) DEFINITION.—As used in this subsection, the term ‘mortgage loan’ means any consumer credit transaction that is secured by the principal dwelling of a consumer.’’.

**(b) PRIVATE RIGHT OF ACTION.—Section 130(a) of the Truth in Lending Act (15 U.S.C. 1640(a)) is amended by inserting ‘‘subsection (f) or (g) of section 131,’’ after ‘‘section 125,’’. (Emphasis Added**)

47. 15 U.S.C. 1640(a) Civil Liabilities provides for damages to the debtor as follows:

(a) **Individual or class action for damages; amount of award; factors determining amount of award**

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

>    (1) any actual damage sustained by such person as a result of the failure;
>    (2)
>    (A) …

>         (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000…"

15 U.S.C. 1640(a)(B)(3) further provides for additional damages including the costs of the action and reasonable attorneys fees, as determined by the Court.

48. The Assignment affixed to the Proof of Claim offered by Wells Fargo Bank, NA  is dated September 10, 2010.  The Debtor requests the Court to take judicial notice that the date of this instant pleading is well past the 30 days required for notice under §131 of the Truth in Lending Act.

49. As of the date of this pleading, the Debtor has not received notice of the purported assignment of her mortgage to Wells Fargo Bank, NA, despite Wells Fargo Bank, NA's statutory obligation to provide such to the debtor.  The Debtors aver that the fact this obligation was not met by  Wells Fargo Bank, NA  in the face of statutory damages, further evidences the likelihood that the Assignment of Mortgage is a false document and does not effectuate an actual valid assignment.

50. To the extent the purported Assignment of Mortgage in the instant case is deemed a valid assignment and Wells Fargo Bank, NA is determined to be the new assignee, the Debtor hereby exercises her right to seek statutory damages, costs and an award of legal fees

from Wells Fargo Bank, NA.

**WHEREFORE,** the debtors pray of the Court as follows:

A.      That Creditor's Motion for Relief from Stay be denied;

B.      That WELLS FARGO BANK, NA be precluded from filing any amended,

modified or substitute claim or further motions seeking relief from stay in this case;

D.      That the Debtor have and recover against WELLS FARGO BANK, NA a sum to

be determined by the Court in the form of actual damages;

F.      That the Debtor have and recover against WELLS FARGO BANK, NA a sum to

be determined by the Court in the form of statutory damages;

G.      That the Debtor have and recover against WELLS FARGO BANK, NA a sum to

be determined by the Court for punitive damages;

H.      That the Debtor have and recover against WELLS FARGO BANK, NA a sum to

be determined by the Court all legal fees and expenses incurred by her attorney(s); and

I.      That the debtor have such other and further relief as the Court may deem just and

proper.


**IX.  Conditional Motion Requesting the Recovery of Legal Fees and Expenses
Under 28 USC 1927**

In the event the Motion for Relief From Stay is withdrawn by Wells Fargo Bank, NA at

any time prior to the conclusion of the final hearing on the merits or in the event this Court

denies the Motion of Wells Fargo based on one or more of the **Affirmative Defenses** pleaded

herein or in the further event that the Court denies the claim upon a finding of one or more of

the following facts:

1.   This Court finds that the factual contentions in the creditor's motion for relief from stay were not based on a reasonable review of the transfer, transactional or account records of the debtor's loan as maintained by the Master Servicer, the Primary Servicer, the Subservicer, the Default Servicer, the Claimant, or any third-party vendor; or

2.   This Court determines that the proof of claim and amended proof of claim was/were filed for some improper purpose such as to harass the debtor, generate fees (legal, servicing or otherwise) or to cause unnecessary delay or needlessly increase the cost of this Chapter 7 bankruptcy case.

Then and in the event any one or more of such findings are made by this Court then the debtor respectfully move this Court pursuant to the provisions of Section 1927 of Title 28 of the United States Code for the recovery of their legal fees and expenses in a sum equal to twice the presumed fee or the hourly billing rate of the attorney for the debtor ($450.00), whichever amount is greater, and for the recovery of the debtors' expenses such as lost time from work, travel costs, telephone calls, postage, paying for bank records, securing and paying for money order or checking tracing and confirmation services, expenses incurred for the electronic tracing of payments and the like, from Wells Fargo Bank, NA, its successors in interest, and/or the attorneys for the Movant.

In support of this conditional motion, the debtors show unto the Court that Section 1927 of Title 28 of the United States Code, regarding Counsel's liability for excessive costs, provides:

*Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.*

A district court has the inherent power to assess attorney's fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975) (internal quotations omitted). In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party. *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). In such instances, the imposition of sanctions "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Chambers v. Nasco*, 501 U.S. 32, 46 (1991) (quoting *Universal Oil*, 328 U.S. at 580).

**WHEREFORE,** the debtor having responded by way of Objection to Motion for Relief from Stay  filed herein for the purpose of reserving her right to hearing before the court respectfully pray of the court as follows:

A.   That the debtor(s) be granted a **preliminary hearing** on all issues raised by the pleadings in this case;

B.   That if applicable the claimant be ordered pursuant to **Rule 7034** of the Federal Rules of Bankruptcy Procedure to **produce all current appraisal reports on the subject property, valuations, delinquency contact reports, mortgage inspection reports, property inspection reports, and all documents** prepared in connection with this loan before any court hearing;

C.   That the court require the claimant pursuant to **Rule 7034** of the Federal Rules of Bankruptcy Procedure to **produce a complete life of loan history of all receipts of payments since the filing of this case (from the Trustee and the Debtors) and a detailed summary of the application and disbursement of all such payments**;

D.   That if applicable the Movant be ordered to provide the debtorwith **the name, address and telephone number of the current holder and owner of the mortgage and promissory note as provided for by Section 1641(f)(2) of Title 15 of the United States Code**;

E.   That if applicable the claimant provide the debtor(s) with a list of each entity having any interest in the mortgage note that is the subject of this motion including, but not limited to, any broker, table-funder, correspondent lender, originator, lender, warehouse lender, trustee, investor, trustee under a pooling and servicing agreement, servicer, sub-servicer, master-servicer, or similar party, and to identify each such party by full name, address, and a telephone number;

F.    That if applicable the Movant be required to provide the debtor(s) for each party listed pursuant to Section E herein the consideration each entity received or disbursed for any interest it obtained or relinquished in the loan as well as the party it paid consideration to or received it from;

G.   That this response be treated as a written **Request for Production of the Documents** described herein, including the production of the lists and records as identified herein, said request being made pursuant to Rule 7034 of the Federal Rules of Civil Procedure and Rule 34 of the Federal Rules of Civil Procedure, and that **the court enter an order requiring such documents to be produced a least ten (10) days prior to any final hearing on this motion**;

H.   That this response be treated as a **Motion pursuant to Rule 9006(c)(1)** of the Federal Rules of Civil Procedure for this court in its discretion without notice and a hearing to reduce the time period to respond to the request for production of documents as provided for herein to a period of no less than ten (10) days prior to the designated hearing date and that the claimant be ordered to fax legible copies of said documents to the attorney for the debtor(s) or to transmit the same by an expedited or express mail service;

I.   That the court require the Movant to establish all facts in its Motion by way of live sworn deposition testimony by qualified and competent agents and employees of the Movant and to that extent the debtor(s) object to the use of any affidavits at this hearing and will only consent

to the testimony of witnesses with actual and personal knowledge of the facts so that they can authenticate that any matter is what it is claimed to be;

J.  That if applicable the motion be dismissed if the Movant fails to produce all of the requested documents at least five (5) days before the hearing date as requested herein and that sanctions be awarded against the claimant in the event thereof;

K.  That if applicable this motion be dismissed pursuant to Rules 7017, 7019, and 7020 of the Federal Rules of Bankruptcy Procedure for failure to prosecute the same in the name of the real party in interest, to join necessary and mandatory parties, or to include the Trustee under the Deed of Trust, or the Trustee under the Pooling and Servicing Agreement, as a necessary party;

L. That if applicable this motion be dismissed for failure of the claimant to comply with the mandatory claim transfer and assignment Rules as provided for by **Rule 3001(e)** of the Federal Rules of Bankruptcy Procedure;

M.  That the debtor(s) be granted a **final hearing** on all issues raised by the pleadings in this case;

N.  That the attorney for the debtor(s) be awarded a non-base legal fee of $450.00 to be paid under the plan; and

O.  That the debtor(s) have such other and further relief as to the court may seem just and proper.

**This document may contain nonpublic personal information about the consumer-debtor(s) subject to the restrictions of the Federal Gramm-Leach-Bliley Act. Such information, if any, is only included in this document for matters and things related to the bankruptcy case of these consumer-debtor(s). You may therefore only use this information in connection with proceedings in this bankruptcy case and for no other purpose. You may not directly or indirectly redisclose or reuse any of the consumer-debtor(s)' nonpublic personal information contained in this document for any other purpose.**

This the 3rd Day of December, 2010.

  /S/ Linda M. Tirelli
Linda M. Tirelli, Esq.,
Of Counsel To David Brodman, Esq.
Counsel For Debtor
One North Lexington Ave., 11th Floor
White Plains, New York 10601
Ph(914) 946-0860 / Fax(914)946-0870

LINDA TIRELLI, ESQ.
OF COUNSEL TO DAVID BRODMAN, ESQ.
COUNSEL FOR DEBTOR
ONE NORTH LEXINGTON AVE., 11TH FLOOR
WHITE PLAINS, NEW YORK 10601
PH(914) 946-0860 / FAX(914)946-0870

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**
-------------------------------------------------------------------X
**IN THE MATTER OF**

**TANDALA MIMS AKA RANDALA WILLIAMS,**          **CHAPTER 7**
                        **DEBTOR**          **CASE NO: 10-14030(MG)**

                                                              **CERTIFICATE OF SERVICE**

-------------------------------------------------------------------X

### CERTIFICATE OF SERVICE

Linda M. Tirelli, attorney for the debtor, hereby certifies to the Court as follows:

1.      I am not a party for the foregoing proceeding;
2.      I am not less than 18 years of age;
3.      I have this day served a copy of the foregoing Objection To Motion For Relief From Automatic Stay By Wells Fargo Bank, NA And Request For Accounting And Conditional Motion For Damages And Fees , on all parties in interest by placing the same in an envelope, first-class mail, postage prepaid, addressed to each person at his dwelling house or usual place of abode or to the place where he regularly conducts his business or profession as follows:


Hon. Judge Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green
New York, NY 10004

David Brodman, Esq.
Law Office of David Brodman
633 Lydig Avenue
Bronx, NY 10462

David B. Shaev, Esq.
Shaev & Fleischman LLP
350 Fifth Ave Ste 7210
New York NY  10118

Ms. Tandala Mims
1167 Grenada Place
Bronx, NY 10466

Ehret A. Van Horn, Esq.

Dennis Jose, Esq.
Natalie Grigg, Esq.
c/o Steven J. Baum, PC
220 Northpointe Parkway
Amherst, NY 14228

Andrew D. Velez-Rivera
U.S. Dept. of Justice
Office of the U.S. Trustee
33 Whitehall Street, 21st. Floor
New York, NY 10004


4.      To the best of my knowledge, information and belief, the parties in interest are not infants or incompetent persons;


5.      Service as outlined herein was made within the United States of America.


This the 3rd Day of December, 2010.

\_\_/S/ Linda M. Tirelli_____
Linda M. Tirelli, Esq.,
Of Counsel To David Brodman, Esq.
Counsel For Debtor
One North Lexington Ave., 11th Floor
White Plains, New York 10601
Ph(914) 946-0860 / Fax(914)946-0870