UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

In re:                                                        Chapter 13
                                                              Case No. 10-14030 (MG)
      TANDALA MIMS
      AKA TANDALA WILLIAMS,

             Debtor.

———————————————————

## AFFIRMATION IN FURTHER SUPPORT OF WELLS FARGO'S MOTION FOR RELIEF

Natalie A. Grigg, Esq., an attorney duly admitted to practice before the United States

Bankruptcy Court for the Southern District of New York, states the following under the penalty

of perjury:

1.      I am an attorney at law and an associate with the office of Steven J. Baum, P.C.,

the attorneys for Wells Fargo Bank, NA ("Wells Fargo"), a secured creditor of Tandala Mims

a/k/a Tandala Williams (the "Debtor"), and, as such, am fully familiar with the facts and

circumstances contained herein.

2.      This Affirmation is submitted in response to the Opposition submitted by the

Debtor and in further support of Wells Fargo's Motion for Relief.

### POINT I

### WELLS FARGO HAS STANDING AS THE HOLDER OF THE NOTE TO FILE THE MOTION FOR RELIEF.

3.      As set forth in the Motion for Relief submitted on behalf of Wells Fargo, the plain

meaning of 11 U.S.C. 362(d) shows that upon the "request of a party in interest" the Court shall

grant relief from the automatic stay. *See* 11 U.S.C. 362(d). While the term "party in interest" is

not defined by the Bankruptcy Code, courts have determined that "the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983).

4.    Under New York law, "[t]he holder of an instrument whether or not he is the owner may…enforce payment in his own name." U.C.C. §3-301. Wells Fargo has set forth ample evidence that Wells Fargo has possession of the original Note. As the delivery of the note is sufficient to effectuate an assignment of the mortgage, Wells Fargo has established that it is the current holder, and thus has a right to enforce payment in its own name. Further, as the current holder, Wells Fargo would be the rightful party in interest and thus have standing to file the Motion for Relief.

5.    This court previously found that an assignee of a mortgage need only submit an affidavit attesting to the fact that the creditor has possession of the original Note in order to file a Proof of Claim. The Secured Creditor urges this Court to utilize the same standard here. Wells Fargo has shown that it has possession of the original Note via the Affidavit of John Kennerty. Thus, as the holder it is entitled to relief from the automatic stay.

### POINT II

### WELLS FARGO HAS CONSTITUTIONAL STANDING TO <u>FILE THE PROOF OF CLAIM.</u>

6.    "Standing requirements emanate from *Article III of the Constitution*, which limits judicial power of courts to actual cases and controversies." *Bridge v. AAMES Capital Corp.*, 2010 U.S. Dist. LEXIS 103154 at *5 (N.D. Ohio Sept. 28, 2010). "To satisfy Article III's standing requirement, a plaintiff must have [1] suffered some actual or threatened injury due to

the alleged illegal conduct of the defendant; [2] the injury must be 'fairly traceable' to the challenged action; and [3] there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.* 454 U.S. 464, 472 (1982)).

7.    Wells Fargo has standing to file the proof of claim because it can easily meet the standing requirements of Article III.  Wells Fargo is the current holder of the Note and is entitled to receive the monthly mortgage payments on the property.  When the Debtor fails to submit the monthly mortgage payments, Wells Fargo is forced to hold onto a debt that is essentially becoming a loss, and advance taxes for which it is otherwise not being reimbursed.  Wells Fargo is not being paid pursuant to the terms of the Note is directly traceable to the Debtor's actions, or more appropriately omission to pay on the Mortgage obligation.  In being permitted to file the Motion for Relief in the present bankruptcy case, this injury will be redressed because Wells Fargo will be able to pursue its rights in a state foreclosure proceeding.

8.    Based on the foregoing, Wells Fargo satisfies the elements of constitutional standing to file the instant Motion for Relief.

## POINT II

### THE DEBTOR HAS NO STANDING TO CHALLENGE THE VALIDITY OF THE ASSIGNMENT.

9.    The main thrust of the Debtor's opposition is that is that the Assignment of Mortgage executed by John Kennerty pursuant to the signing authority he was delegated with by MERS is questionable and may be fraudulent.  However, as is set forth below, the Debtor has no standing to challenge the Assignment of Mortgage and thus the Debtor's argument must fail.

3

10.     "Standing requirements emanate from *Article III of the Constitution*, which limits judicial power of courts to actual cases and controversies." *Bridge v. AAMES Capital Corp.*, 2010 U.S. Dist. LEXIS 103154 at *5 (N.D. Ohio Sept. 28, 2010). "To satisfy Article III's standing requirement, a plaintiff must have [1] suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; [2] the injury must be 'fairly traceable' to the challenged action; and [3] there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.* 454 U.S. 464, 472 (1982)).

11.     Application of these factors to the present case leads to the conclusion that the Debtor has no standing to challenge the assignment. Here it is abundantly clear that the debtor owes a debt. The Debtor does not dispute that she signed the Note and Mortgage. The Debtor affirmatively acknowledged the debt in his Petition, and importantly does not list it as a disputed debt. Most recently, the Debtor filed a Request for Loss Mitigation specifically seeking to discuss loss mitigation with Wells Fargo Bank, thus showing that the Debtor knows that Wells Fargo is the current holder of the Note.

12.     Challenging the validity of an assignment fails to state a claim of injury since the challenge is not whether such a debt exists, but rather to whom it is owed. *See Livonia Property Holdings, LLC v. Farmington Road Holdings, LLC*, 2010 U.S. Dist. LEXIS 47595 (E.D. Mich. May 13, 2010). The claim that the assignment is invalid does not state a claim to injury as inevitably the true holder has a right to remedy under state law for the debtor's defaulting on her mortgage. "Although a debtor may assert certain defenses that render an assignment invalid...he generally may not assert any ground which may render the assignment voidable 'because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure

4

him or herself that he or she will not have to pay the same claim twice." *Livonia Property Holdings*, 2010 U.S. Dist. LEXIS at *23. "A debtor, for example, cannot raise alleged acts of fraud...." *Id.*

13.    As the court in *Bridge* succinctly stated, "regardless of the outcome of this litigation, Plaintiff is still in default on her mortgage and subject to foreclosure. As a consequence, Plaintiff has not suffered any injury as a result of the assignment between [assignor] and [assignee] ..." 2010 U.S. Dist. LEXIS 103154 at *13 (N.D. Ohio Sept. 28, 2010).

14.    In *Ifert v. Miller*, 138 B.R. 159 (Bankr. E.D. Pa. 1992) the court held that a debtor could not challenge the validity of an assignment. The court stated that:

> [The underlying contract] is between [Debtor] and [Assignor]. [Assignor's] assignment contract is between [Assignor] and [Assignee]. The two contracts are completely separate from one another. As a result of the assignment of the contract, [Debtor's] rights and duties under the [underlying] contract remain the same: The only change is to *whom* those duties are owed....[Debtor] was not a party to [the assignment], nor has a cognizable interest in it. Therefore, [Debtor] has no right to step into [Assignor's] shoes to raise [its] contract rights against [Assignee]. [Debtor] has no more right than a complete stranger to raise [Assignor's] rights under the assignment contract.

*Id.* at 166 n.13.

15.    A debtor generally cannot challenge an assignment since the debtor's underlying obligations to the true holder remain unaffected, and thus the debtor lacks any interest in the assignment that would merit a cause of action against the assignee. As the court in *Infert* explained, it is not a matter of whether the debtor's obligation remains but rather a matter of "to *whom* those duties are owed." *Id.*

16.    It has long been recognized that a party to an underlying contract, here the debtor, may not challenge another party's subsequent assignment and lacks standing to challenge its

5

validity or enforcement. *See Livonia Property* 2010 U.S. Dist. LEXIS 47595 at \*28-29 ("Borrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary, where it has not been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their validity."); *Rogan v. Bank One*, 457 F.3d 561, 567 (6th Cir. 2006) ("because neither the debtors nor the Trustee [were] parties to the [assignment]… [t]hey lack standing to enforce it; they cannot claim to have relied on it.").

17.    "It is well-accepted that unless a contract explicitly prohibits assignment, an assignment is valid over one party's objection." *Pierce v. Wells Fargo Bank*, 2006 U.S. Dist. LEXIS 96896 at \*3 (N.D. N.C. Sept. 29, 2006)); *see also Liu v. T&H Mach., Inc.*, 191 F.3d 790, 797 (7th Cir. 1999) (party to underlying contract lacks standing to "attack any problems with the reassignment" of that contract); *Nicolls Pointing Coulson, Ltd. v. Transp. Underwriters of La., Inc.*, 777 F. Supp. 493 (E.D. La. 1991) ("a debtor cannot challenge an assignment of a debt by a creditor unless he can show he is prejudiced by the assignment"); *In re Holden*, 271 N.Y. 212, 2 N.E.2d 631 (N.Y. 1936) ("The assignments were valid upon their face. The assignee was the legal owner of the claims assigned. No one could question the validity of the assignments except the assignors."); *Blackford v. Westchester Fir Ins. Co.*, 101 F. 90, 91 (8th Cir. 1900) ("As long as no creditor of the assignor questions the validity of the assignment, a debtor of the assignor cannot do so."); *The Prussia*, 100 F. 484 (D. Wash. 1900) (holding the validity of an assignment cannot be collaterally attacked on the ground of alleged technical irregularities by a non-party to the assignment, where no objection is made by the assigning entity); Richard A. Lord, 29 Williston on Contracts § 74:50 (4th Ed.) ("[T]he debtor has no legal defense [based on invalidity of the assignment]… for it cannot be assumed that the assignee is desirous of avoiding the assignment.").

18.    In the present case, the Debtor has failed to show any contractual right that would enable her to challenge the validity of the assignment. The Debtor is not a party to the assignment, and as a third-party has no standing to challenge its validity. The Debtor has not suffered any injury as a result of the assignment. There is no change as to whom the Debtor owes her payments. As discussed below, the assignment of mortgage was merely to take the subject Mortgage out of the MERS system. The Debtor is not paying the same monthly mortgage payment twice, nor does she have two creditors competing over being paid on the debt. Likewise, the The Debtor cannot show any injury as a result of the assignment, and cannot prove she has standing to challenge same.

## POINT IV

### THE MERS ASSIGNMENT IS VALID.

19.    Assuming arguendo that the Court finds the Debtor has standing to challenge the assignment, the Debtor's argument still fails because it is wholly unfounded and without merit.

20.    New York case law has recognized that MERS has the right not only to record its assignments and discharges of mortgages, but also to outright foreclosure on and sell property subject to one of its mortgages. *See e.g. MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006), *Mortgage Electronic Registration Systems, Inc. v. Coakley*, ___ A.D.2d ____, 2007 N.Y.Slip Op. 05478 (2d Dept. June 19, 2007); *see also U.S. Bank, N.A. as Trustee for Deutsche ALT-A Securities Mortgage loan Trust Series 2007-2 v. Flynn*, ____A.D.2d____; 2010 N.Y. Slip. Op. 20093 (Sup. Ct. March 12, 2010) (written assignment of the note and mortgage by MERS confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment.)

7

21.    MERS' status as a "nominee" is a common occurrence in public land records.

Individuals frequently confer rights to a "nominee," "agent," "fiduciary," or "trustee" to enable

that individual to act on their behalf. *See*, for example, New York Real Property Law (RPL)

§§124 *et seq.* with regard to trustees' powers in mortgage investments. The term "nominee" was

defined in *Schuh Trading Co. v. Commissioner of Internal Revenue*, 95 F.2d 404, 411 (7th Cir.

1938), as follows:

> The word nominee ordinarily indicates one designated to act for
> another as his representative in a rather limited sense. It is used
> sometimes to signify an agent or trustee. It has no connotation,
> however, other than that of acting for another, or as the grantee of
> another . . .

22.    This definition has become accepted as the common meaning of "nominee." *See*

Black's Law Dictionary 1076 (8th ed. Thompson West 2004). Nominees have often been used by

institutional investors in securities registration, to allow the investor to avoid onerous requirements

of establishing the right of registration by a fiduciary. In addition, Real Property Law §275(2)(a)

expressly recognizes the commercial practice of lenders selling mortgages in the secondary market,

as well as the practice of designating "nominees" as representatives in mortgage loan transactions.

23.    It is familiar practice in real estate transactions to use a nominee for a variety of

purposes, including to execute or hold mortgage instruments. *Friedman on Contracts and*

*Conveyances of Real Property* § 2.2 (6th Ed.). The validity of nominees in real property transactions

has been upheld in New York. For example, in *In Re Cushman Bakery*, 526 F.2d 23, 30 (1st Cir.

1975) (*citing* New York law), *cert. denied* 425 U.S. 937 (1976), the court noted:

> it is clear that the recording of the real estate mortgages and
> financing statements was entirely proper despite the fact that Bakers,
> as Seaboard's nominee, rather than Seaboard, as the principal
> creditor, was named as the mortgagee and secured party. The use of
> a nominee in real estate transactions and as mortgagee in a recorded

8

mortgage has long been sanctioned as a legitimate practice. (citations omitted).

24.    The use of a nominee or agent as a representative of the lender or the mortgagee has been upheld in New York. *See e.g. Fairbanks Capital Corp. v. Nagel*, 289 A.D.2d 99 (1st Dep't 2001) (holding that the servicing agent had standing to maintain a mortgage foreclosure proceeding in its capacity as servicing agent for the trustee lender); *Amherst Factors, Inc. v. Kochenburger,* 4 N.Y.2d 203 (1958); *Mutual Life Ins. Co. v. Nichols*, 144 A.D. 95 (1st Dep't 1911); *In Re Fried Furniture Corp.*, 293 F. Supp. 92 (E.D.N.Y. 1968), *aff'd* 407 F.2d 360 (2d Cir. 1969). New York courts have also recognized the rights of trustees and agents to act on behalf of lenders in a variety of situations. *See, e.g., In Re Lehrenkrauss*, 6 F. Supp. 687 (E.D.N.Y. 1934) (noting that certificates of participating interests in a mortgage made the nominal mortgagee, the trustee and nominee for the certificate holders with the lawful authority to collect interest and principal, distribute such monies and, among other powers, to take such action as may be necessary to enforce the note and mortgage).

25.    The uniform MERS Mortgage clearly demonstrates the lender's delegation of authority to MERS, as its agent in the MERS Mortgage, and the borrower's acknowledgement and acceptance of MERS as the agent of the lender, and its successors and assigns. The MERS Mortgage expressly authorizes MERS to execute assignments, discharges, releases and other documents with respect to the mortgage and security instrument on record in the County Clerk's Office. The MERS Mortgage, being the same form of mortgage executed by the Debtor in the instant proceeding, provides, in relevant part, as follows:

> I [the borrower] understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(C) <u>to exercise any or all of those rights</u>, including, but not limited to, the right to foreclose and sell the Property; and

(D) <u>to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument</u>.

(Emphasis added).

26.    It is well settled in New York that where a mortgage is signed by the mortgagor, delivered to and accepted by the mortgagee, <u>or its agent</u>, the mortgage constitutes a valid contract and security or lien. *See Munoz v. Wilson*, 111 N.Y. 295 (1888); *Wood v. Travis*, 231 A.D. 331 (3d Dep't 1931). The recording of a mortgage is presumptive evidence of delivery by the mortgagor and acceptance by the mortgagee. *See Preston v. Albee*, 120 A.D. 89 (1st Dep't 1907).

27.    The agreement to treat MERS as the lender's agent is contractual between the borrower and lender. The terms of the MERS mortgage are clear and certain and, as such, the court's role is limited to interpretation and enforcement of contractual terms. *Strong v. Reeves*, 114 N.Y.S.2d 97 (3rd Dept. 1952); *JJFN Holdings, Inc. v. Monarch Investment Properties*, 736 N.Y.S.2d 66 (2nd Dept. 2001); *Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 623 N.Y.S.2d 790 (1995). Further, it is well-settled that the court has no authority to make a new contract for the parties or recast the contract between them. *LaVere v. R.M. Burritt Motors, Inc.*, 446 N.Y.S.2d 851 (New York City Ct. 1981); *see also, Mitler v. Friedeberg*, 222 N.Y.S.2d 480 (N.Y. Sup. 1961); *Nemmer Furniture Co. v. Select Furniture Co.*, 208 N.Y.S.2d 51 (N.Y. Sup. 1960); *Empire Sportswear, Inc. v. Newsday, Inc.*, 178 N.Y.S.2d 833 (N.Y. Sup. 1958), *affirmed by* 185 N.Y.S.2d 78 (2nd Dept. 1959); *Royce Furs, Inc. v. Home Ins., Co.*, 291 N.Y.S.2d 529 (1st Dept. 1968); *Barrand v. Quinn*, 98 N.Y.S.2d 1013 (4th Dept. 1950), *affirmed by* 302 N.Y. 744 (1951).

28.    It is a fundamental principle that the courts should not interfere with the

contractual rights set forth in a mortgage agreement. The Court of Appeals held:

> To treat this mortgage as a mechanic's lien, as the Appellate Division did,
> would constitute an impairment of the obligations of the contract that the
> parties chose to make. <u>Absent clear statutory authorization to do so, the
> court should not interfere with such rights</u>. (Emphasis added).

*W. L. Development Corp. v. Trifort Realty, Inc.,* 44 N.Y.2d 489, 499 (1978).

29.    An agreement entered into by an agent pursuant to authority granted by the

agency agreement or by instruction of the parties is valid and enforceable. *99 Commercial Street

Inc. v. Goldberg*, 811 F.Supp. 900, 906 (S.D.N.Y. 1993). An agency agreement may take any

form "desired by the parties concerned." New York General Obligations Law §5-1501(1).

Indeed, the public policy of New York requires that there be liberal use and judicial recognition

of the efficacy of principal and agency relationships. *See Arens v. Shainswitt*, 37 A.D.2d 274 (1st

Dep't 1971), *aff'd* 29 N.Y.2d 663 (1971); *Cymbol v. Cymbol*, 122 A.D.2d 771 (2d Dep't 1986).

30.    MERS' relationship with its member lenders is that of agent with the

lender-principal. This is a fiduciary relationship, which results from the manifestation of consent

by one person to another allowing the other to act on his behalf, subject to his control and

consent. The principal is the one for whom action is to be taken, and the agent is the one who

acts. *See* Restatement [Second] of Agency § 1(b)(c); *see also Maurillo v. Park Slope U-Haul*,

194 A.D.2d, 142, 146, (2d Dep't 1993); *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994), cert.

denied, 513 U.S. 876 (1994). An agency relationship may be established by conduct, an oral

agreement or a written instrument. *See Heine v. Papp*, 97 A.D.2d 929 (3d Dep't 1983). An

agent may be appointed to do the same acts and to achieve the same legal consequences as if the

principal had himself personally acted, except as to acts which by their nature, by public policy,

or by contract require personal performance or acts which are illegal. *See Central Trust Co. v. Sheahen*, 66 A.D.2d 1015 (4th Dep't 1978).

31.    In *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 828 N.Y.S.2d 266, (2006) the New York Court of Appeals rejected the Suffolk County Clerk's arguments that the MERS Mortgage was improper and did not constitute a conveyance because it named MERS as a nominee and that MERS could not serve as a "mortgagee." The Court of Appeals explained, "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* The initial mortgage is recorded in the County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record. The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office. Rather, such assignments are tracked electronically in the MERS system. *See id.* Once a mortgage is going to be assigned outside of the MERS system, then an assignment like the one at issue is executed and recorded. If the mortgage continued to be transferred among and between MERS members, then no such assignment would be required. The Court of Appeals found that the uniform MERS Mortgage and assignments and discharges executed by MERS constituted conveyances entitled to be recorded in County Clerks' offices in New York.

32.    In the MERS system, which involves an electronic registration system, the transfer of the beneficial interests in the mortgages is facilitated by MERS serving in the capacity as agent for **all** of its members. *See* Bergman, Lender and Servicer Alert (Aug. 2004) (emphasis added). MERS instruments are registered in its central database, which is available to the public,

and which tracks all transfers of beneficial ownership and servicing rights. *See id.* MERS becomes the lender's nominee at inception when the lender and borrower name MERS as mortgagee of record or, if a mortgage is acquired by a MERS member, MERS becomes the mortgage holder's nominee pursuant to the MERS governing documents. *See id.*

33.     Likewise, the court in *US Bank, N.A. v Flynn*, 2010 NY Slip Op 20093, 4 (N.Y. Sup. Ct. 2010) found that

> "where an entity such as MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, its successors and assigns, a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment. In such cases, MERS is acting as the nominee of the owner of the note and of the mortgage, in which MERS is additionally designated as the mortgagee of record. No disconnect between the note and mortgage occurs when MERS acts, at the time of the assignment, as the nominee of the original lender or a successor owner or holder of the note and mortgage. Consequently, a MERS assignment does not violate this State's long standing rule that a transfer of a mortgage without a concomitant transfer of the debt is void."

34.     Similarly, Federal Courts across the United States have also found that MERS has the authority to execute assignments as a nominee for a lender. In *Kiah v. Aurora Loans Services*, 2010 U.S. Dist. LEXIS 121252 (Dist. M.A. November 16, 2010), the court found that MERS could assign the mortgage even if it "never had possession of or a beneficial interest in the note...because MERS was holding the mortgage in trust...." 2010 U.S. Dist. LEXIS 121252 at *17. The court also found that "even though MERS does not have a beneficial interest in the property, it nonetheless could have transferred the mortgage on behalf of the beneficial owner." 2010 U.S. Dist. LEXIS at *18.

35.    Likewise in *Perry v. Nat'l Default Servicing Corp.,* 2010 U.S. Dist. LEXIS 92907 (Dist. N.D.C.A. August 20, 2010) also upheld an assignment from MERS to Kondaur Capital Corporation because the Deed of Trust stated that MERS was nominee for the Lender, and also contained the MERS Mortgage language where in the Borrower agreed that MERS held legal title and had the right to foreclose.  The court there found that the Debtor had initialed that page of the Deed of Trust and found that "the plain language of the Deed, MERS was the beneficiary and could exercise 'all of [Borrower's] interests,' including foreclosure rights."  2010 U.S. Dist. LEXIS 92907 at 11.  The court went on to state that "courts interpreting trust deeds appointing MERS as beneficiary and nominee, as this one does, have held that 'MERS had the right to assign its beneficial interest to a third party.'"  *Id. See also Croce v. Trinity Mortg. Assur. Corp.* 2009 U.S. Dist. LEXIS 89808 (Dist. NV September 28, 2009) (court found that MERS had standing as a beneficiary under the Note and Deed of Trust to participate in the foreclosure proceedings);

36.    Whether MERS is identified as the "mortgagee" or the "nominee" (that is, the agent) for the lender in a mortgage instrument, MERS fits squarely within the scope of persons authorized by Real Property Actions and Proceedings Law ("RPAPL") §1921(9) (a) to serve as a mortgagee and execute and deliver discharges of mortgages:

> "Mortgagee" means (i) the current holder of the mortgage of record or the current holder of the mortgage, or (ii) any person to whom payments are required to be made or (iii) their personal representatives, agents, successors, or assigns. (emphasis added).

37.    Similarly, RPAPL §1921-a requires the mortgagee, as defined above, to execute and deliver partial releases of lien.  In other statutory mandates, the RPL obligates the mortgagee to perform various transactions.  For example, RPL §274-a requires the mortgagee to execute and deliver a loan payoff statement and other mortgage-related documents, such as abstracts of

title and title insurance policies in the mortgagee's possession.  RPL §275 requires the mortgagee

to execute and deliver a discharge of mortgage upon tender of payment, and also authorizes the

mortgagee to execute and deliver an assignment of mortgage if it is traded or sold in the

secondary mortgage market.  Because the MERS Mortgage names MERS the "mortgagee," and

the mortgage discloses that MERS is the  "nominee" or "agent" for the lender, its successors and

assigns, and as shown above,  MERS is fully authorized to perform the duties of the mortgagee

in accordance with these statutory mandates, including the execution and delivery of the

assignment of mortgage at issue in this proceeding.

38.     It is clear, therefore, given the text of the Mortgage executed by the Debtor that

MERS has been designated as the mortgagee, and as nominee or agent of the lender.  When

MERS executes instruments as the nominee or agent for the lender, its successors and assigns,

MERS is vested with explicit powers to act with respect to the mortgage and the secured real

estate.  Accordingly, the assignment executed by MERS as the authorized and disclosed agent

for the lender and its successors in interest is valid and effective. Based on the foregoing, the

assignment from MERS as nominee for Lend America to Wells Fargo Bank, N.A. was

authorized and valid.

39.     Additionally, as the New York State Court of Appeals explained in *MERSCORP,*

*Inc.*, the MERS System was created in 1993 by several large participants in the real estate

mortgage industry to track ownership interests in residential mortgages.  The Federal National

Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National

Mortgage Association, the Mortgage Bankers Association of America and others participated in

the creation of MERS. *See MERSCORP, Inc.*, 828 N.Y.S.2d at 268.

15

40.    The Court of Appeals explained, "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* The initial mortgage is recorded in the County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record. The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office. Rather, such assignments are tracked electronically in the MERS system. *See id.* Once a mortgage is going to be assigned outside of the MERS system, then an assignment like the one at issue is executed and recorded. If the mortgage continued to be transferred among and between MERS members, then no such assignment would be required.

41.    In the MERS system, which involves an electronic registration system, the transfer of the beneficial interests in the mortgages is facilitated by MERS serving in the capacity as agent for **all** of its members. *See* Bergman, Lender and Servicer Alert (Aug. 2004) (emphasis added). MERS instruments are registered in its central database, which is available to the public, and which tracks all transfers of beneficial ownership and servicing rights. *See id.* MERS becomes the lender's nominee at inception when the lender and borrower name MERS as mortgagee of record or, if a mortgage is acquired by a MERS member, MERS becomes the mortgage holder's nominee pursuant to the MERS governing documents. *See id.* MERS has no legal or beneficial interest in the promissory note, and it does not become holder of the note for the loans for which it serves as mortgagee. *See* NCLC Reports, Bankruptcy and Foreclosures Edition, vol. 23, at 10 (Nov./Dec. 2004).

42.    The execution of the assignment here was merely to transfer the Mortgage out of the MERS system. However, MERS was never a holder of the Note, nor did it obtain any legal or beneficial interest in the Note. Following execution of the Assignment here, which merely records that the Mortgage was transferred out of the MERS system, MERS retained no interest whatsoever in the mortgage, or in this matter. Therefore, as the assignment was out of the MERS system solely, there was no transfer of an interest of and the Debtor's argument is without merit.

43.    Further, as previously explained, Mr. Kennerty holds the position of Assistant Secretary and Vice President of MERS pursuant to the signing authority granted to him by MERS. MERS granted this signing authority as a convenience to MERS to allow for assignments to be completed expeditiously. As such, Mr. Kennerty executed the assignment out of the MERS system and to Wells Fargo Bank. Contrary to the debtor's allegations, there is no conflict of interest where the parties have outwardly entered into the present arrangement through the implementation of a Corporation Resolution. Additionally, Debtor's allegations that Mr. Kennerty may not be a proper representative to be named in the Corporate Resolution should be disregarded by this Court. First, the Debtor yet again, is attempting to challenge a document that she is not a party to, and further, MERS is not a party to this action. The Corporate Resolution is a binding document between two separate entities. The Debtor should not be permitted to challenge its authority.

44.    Because MERS is frequently involved in mortgage-related legal proceedings across the country, it streamlined the process for effecting assignments. Specifically, a Corporate Resolution was entered into that granted certain Wells Fargo employees limited signing authority on behalf of MERS. The Corporate Resolution from MERS specifically

17

appointed Mr. Kennerty, among others, an Assistant Secretary and Vice President of MERS for the limited purpose of performing a merely ministerial act -- executing mortgage documents, including assignments of mortgages necessary to foreclose on a mortgage loan registered on the MERS system. The Resolution granted Mr. Kennerty signing authority only and nothing more.

45.     Granting this type of signing authority to outside individuals has allowed MERS to eliminate the unnecessary and time-consuming steps involved in having the necessary paperwork shuttled back and forth to MERS for signature and execution. Pursuant to this initiative by MERS to streamline the assignment process, several employees, including Mr. Kennerty, received appointments as "Assistant Secretary and Vice President" of MERS. Therefore, Mr. Kennerty was within his authority when the assignment was executed from MERS to Wells Fargo Bank, N.A..

46.     While the Debtor is trying to raise issues by informing the Court of extraneous deposition testimony, this Court should be aware that the deposition testimony of Mr. Kennerty upon with the Debtor relies involves a case that has been dismissed pursuant to a Motion to Dismiss by Wells Fargo. Thus, while Mr. Kennerty may have testified in another case, that testimony lends no credence to the Debtor's arguments other than to try to muddy the waters so that the focus is diverted from the real issue at hand, that is, that the Debtor has failed to pay his monthly mortgage payments and is currently in default on her obligations under the Note and Mortgage.

47.     Based on the foregoing, the Assignment executed by Mr. Kennerty was valid and the Debtor's arguments must fail.

## POINT III

### A POST-PETITION ASSIGNMENT OF MORTGAGE IS
### NOT A VIOLATION OF THE AUTOMATIC STAY.

48.     The execution of an assignment is not in violation of Section 362(a)(4) or (a)(5)

of the Bankruptcy Code, and Debtor cites to no legal authority to support her allegations.

49.     Contrary to Debtor's assertions, it is well established that the post-petition

recordation of the assignment is not a violation of the automatic stay.  The sale of a Mortgage or

Deed of Trust is the sale of a commodity and not the creation, perfection, or enforcement of a

lien against the Mortgaged Premises.  The creation of the lien took place at the time the Note and

Mortgage was executed by the Debtor, and was perfected when the Mortgage was recorded with

the New York City Department of Finance, Office of the City Register  on the 2nd day of June,

2004.

50.     The recordation of the security instrument perfected the lien against the Debtor's

property and served as constructive notice that the lien existed.  *See Alliance Funding Co. v.*

*Taboada*, 39 A.D.3d 784 (2d Dep't 2007) (holding that the date the mortgage is recorded is the

operative point for determining the rights of those claiming under the mortgage).  Thus, the

written assignment dated after the bankruptcy was filed did not affect the pre-petition perfection

of the lien as against the Debtor's property.  *See, e.g., Rogan v. Bank One, N.A. (In re Cook)*, 457

F.3d 561, 567 (6th Cir. 2006) (holding that creditor's failure to file an assignment prior to the

bankruptcy filing "did not affect the perfection of the lien as against the mortgagors and those

claiming through them"); *Fannie Mae v. Kuipers*, 314 Ill. App. 3d 631 (Ill. App. Ct. 2000)

(holding that the assignee of a mortgage was not required to record the assignment because the

assignee "stood in the shoes" of the mortgage company, which had recorded its interest); *See*

*also, generally Obuchowski v. Associates Nat'l Mortgage Ass'n (In re Briggs)*, 186 B.R. 830, 833

(Bankr. D. Vt. 1995) (holding that a bankruptcy trustee could not avoid a mortgage lien based on the fact that the mortgage assignment was unrecorded, because the recording of the original mortgage gave the trustee constructive notice).

51.     In fact, an assignment of a properly perfected mortgage merely represents a transfer of a lien's ownership between creditors, rather than a perfection of the underlying lien against the property. *See Kapila v. Atlantic Mort. & Inv. Corp. (In re Halabi),* 184 F.3d 1335, 1337 (11th Cir. 1999) ("In each instance, the assignment was merely the transfer of one mortgagee's interest to a successor mortgagee."); *Patton v. State Street Bank (In re Patton),* 314 B.R. 826, 833 (Bankr. D. Kan. 2004) (holding that where a mortgage is properly perfected pre-petition, subsequent assignments do not violate the automatic stay, and that recording such assignments would likely be ministerial in nature).

52.     Here, the Debtor executed the Mortgage in 2004, almost 6 years before she filed for bankruptcy. Thus, the lien on the Debtor's real property was perfected at that time. Therefore, Debtor's argument that the automatic stay has been violated is without merit, contrary to case law, and ultimately must fail.

## POINT V

## THE SECURED CREDITOR HAS NOT VIOLATED THE
## TRUTH IN LENDING ACT.

53.    The Debtor's argument that there has been a violation of 15 U.S.C.§§ 1640(A) and 1641 fails is without merit.  The Debtor misinterprets the language of this statute in an attempt to convince the Court that notice of the assignment was required.  The plain language of the statute reads that notice must come within 30 days after which the mortgage loan is sold _or_ transferred _or_ assigned.  The plain language of this section would not require Wells Fargo to send a notice where one has already been sent, and where the Debtor was already advised that the loan was transferred to Wells Fargo.  Thus, as long as Wells Fargo previously provided such notice to the Debtor then a second notice when the Assignment of Mortgage was issued would not be necessary.  Your affiant has requested a copy of this Notice from Wells Fargo and is awaiting receipt of same.

54.    While your affiant has requested a copy of this notice from Wells Fargo, a reasonable conclusion is that the Debtor received notice because the Debtor has submitted monthly mortgage payments to the Wells Fargo and listed Wells Fargo within her schedules.  Clearly, if the Debtor did not receive such notice then she would not have known that Wells Fargo was entitled to receive payments, she would not have submitted monthly mortgage payments to Wells Fargo, nor would she have known to list Wells Fargo as a creditor having a secured claim on her schedules.

55.    Additionally, while the Debtor may claim that there is a TILA violation, this fails to form a proper defense to a Motion for Relief.  The Debtor's allegations do not negate the fact that the Debtor has failed to submit monthly mortgage payments and is in default.  The Debtor's

argument also flies in the face of other admissions that show the Debtor was aware that Wells Fargo is owed the debt.

56.    Further, the Debtor is only entitled to collect actual damages. The Debtor has failed to show that she sustained any damages by the alleged violation.

## POINT VI

### THE REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED BECAUSE THERE IS NO EVIDENCE THAT THE SECURED CREDITOR HAS COMMITTED A FRAUD UPON THE COURT OR OTHERWISE ACTED IN BAD FAITH.

57.    It is improper for the court to issue attorneys' fees where there is no indicia of bad faith. *See In re Jensen*, 2010 Bankr. LEXIS 231 at*5 *citing Wilder v. GL Bus Lanes*, 258 F.3d 126. 130 (2d Cir. 2001). "Bad faith...is characterized as an attempt to abuse the judicial process...and [requires the Court] to determine if that party has misrepresented facts in its submissions to the Court." *In re Gorshtein*, 285 B.R. 118, at 124 (Bankr. S.D.N.Y. 2002). Similarly, "'bad faith'...means that the party was motivated by improper purposes... or "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose...." *Grand St. Realty v. McCord*, 2005 U.S. Dist. LEXIS 45314 at *25 (E.D.N.Y. September 30, 2005). "The finding of bad faith must be supported by 'a high degree of specificity in the factual findings' of the sanctioning court." *McCord*, 2005 U.S. Dist. LEXIS 45314 at *25. "Courts must find bad faith based on clear evidence." *Minbatiwalla*, 424 B.R. at 120.

58.    In the present case, there is no evidence of bad faith. Wells Fargo is the current holder of the Note and entitled to be paid on the debt. The records reflect that the Debtor is in default in his payments and due for the April 1, 2010 monthly mortgage payment. Under the terms of the Note and Mortgage, Wells Fargo is entitled to enforce the terms of the Note. Since the

22

Debtor is in default, the only way to do that is to seek relief from this Court so that it may then proceed with a foreclosure action. Thus, the instant Motion for Relief was at all times filed in good faith.

59.    Additionally, as previously explained, the execution of the assignment was performed pursuant to Corporation Resolution executed by MERS that entitled Mr. Kennerty to execute the assignment. The Debtor cannot show that the execution of the assignment was meritless, nor that the assignment was executed for improper purposes. Therefore, the Debtor has failed to establish any bad faith and the request for attorneys' fees must be denied.

60.    Based on the foregoing, the Secured Creditor has amply proven that as the holder of the Note and that the Debtor is in default on her obligations under the Note and Mortgage. Therefore, the Secured Creditor it is entitled to relief from the automatic stay. Contrary to debtor's baseless contention, there have been no fraudulent documents submitted to this Court. As can be seen from the proof attached to the Secured Creditor's opposition papers, all of the amounts set forth in the Motion are supported and thus the Court should grant the Secured Creditor's Motion in its entirety.


WHEREFORE, the Secured Creditor respectfully requests an Order of this Court granting the Secured Creditor's Motion for Relief, together with such other and further relief as the Court deems just and proper.


Dated: December 7, 2010
       Buffalo, NY

                                             _Natalie A. Grigg_
                                             Natalie A. Grigg